**CHAMBERS COUNTY and Commissioners Court of Chambers County, Appellants,**

v.

**TSP DEVELOPMENT, LTD., Appellee.**

No. 14–00–00909–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 29, 2001.

Rehearing Overruled Jan. 17, 2002.

James P. Allison, Austin, for appellants.

Carl A. Parker, Port Arthur, James W. Ingram, Paul A. Seals, Austin, for appellee.

Panel consists of Justices YATES, EDELMAN, and WITTIG.*

## OPINION

DON WITTIG, Senior Justice (Assigned).

Chambers County and the Commissioners Court of Chambers County (the "County") appeal from the denial of their Plea to the Jurisdiction and from the summary judgment granted to TSP Develop-

---

* Senior Justice Don Wittig sitting by assignment.

ment.

ment in its lawsuit against the County. TSP's lawsuit sought a declaratory judgment and an injunction against a county ordinance prohibiting the disposal of solid waste in certain areas of the county. On appeal, the County contends that the trial court erred in holding: (1) that TSP had standing to file the lawsuit and (2) that the County did not have authority to prohibit solid waste disposal within the extraterritorial jurisdiction of a municipality. We reverse and render.

## Background

TSP filed suit seeking a determination, in the form of a declaratory judgment, pursuant to the Private Real Property Rights Preservation Act that two Chambers County ordinances prohibiting the disposal of solid waste in certain areas of the county were invalid or at least inapplicable to TSP's property. *See* TEX. GOV'T CODE ANN. §§ 2007.001–.045 (Vernon 2000) (Private Real Property Rights Preservation Act); TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp.2001) (Uniform Declaratory Judgments Act). The County filed a Plea to the Jurisdiction, alleging that TSP did not possess an interest sufficient to impart standing to bring a lawsuit against the ordinance. At the time the ordinances were passed, TSP had an existing contract regarding a piece of property in the prohibited area, and it had submitted an application to the Texas Natural Resources Conservation Commission requesting a permit to dispose of solid waste on the same land.[1] The trial court determined that the contract was a contract for sale and not merely an option contract. On that basis, the court determined that TSP had standing, and the Plea to the Jurisdiction was denied.

TSP filed a motion for summary judgment contending that the ordinances did not apply to the property that TSP had an interest in because that property is within the extraterritorial jurisdiction of the City of Baytown. The trial court agreed and granted summary judgment. In the judgment, the trial court specifically interpreted section 364.012 of the Texas Health and Safety Code as not authorizing the County to regulate or prohibit solid waste disposal operations within a municipality's extraterritorial jurisdiction. *See* TEX. HEALTH & SAFETY CODE ANN. § 364.012 (Vernon 2001). On appeal, the County attacks the denial of the Plea to the Jurisdiction and the grant of summary judgment on behalf of TSP.

## Jurisdiction

Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to hear a case. *Bland Independent School Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000). A plea to the jurisdiction is an appropriate vehicle to challenge subject-matter jurisdiction. *Id.* at 554. When necessary to resolve jurisdictional issues, a court may consider evidence and is not required to look solely to the pleadings. *Id.* Subject-matter jurisdiction is a legal question subject to *de novo* appellate review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

TSP's Second Amended Original Petition couches all of its causes of action in terms of the Private Real Property Rights Preservation Act. *See* TEX. GOV'T CODE ANN. §§ 2007.001–.045 (Vernon 2000). The Act allows owners of real property to file a

---

1. In a related case, the Austin Court of Appeals held that the TNRCC erred in not considering TSP's application because of rights it acquired under former § 481.143(a) of the Health & Safety Code. *See TSP Dev., Ltd. v. TNRCC,* 16 S.W.3d 148, 153 (Tex.App.—Austin 2000, no pet.).

lawsuit against a political subdivision to determine whether a taking has occurred. *Id.* § 2007.021(a). The Act defines an "owner" as "a person with legal or equitable title to affected private real property at the time a taking occurs." *Id.* § 2007.002(2). The Act does not authorize anyone other than an owner, so defined, to bring suit. Therefore, in order for TSP to have standing to pursue the present lawsuit, it must have held legal or equitable title to property affected by the ordinance. TSP did indeed have a contract concerning land in the relevant area. The trial court held that the contract was one for the sale of land and, consequently, that TSP had standing. The County, however, contends that this contract between TSP and USX, the alleged seller, was merely an option contract, not a contract for sale, and therefore, TSP did not have a sufficient interest to give it standing to attack the ordinance.

■ A contract for the sale of real estate is an agreement that binds the purchaser to buy and the seller to sell in accordance with the terms of the contract. *Greve v. Cox,* 683 S.W.2d 535, 536 (Tex. App.—Dallas 1984, no writ). A contract for sale passes equitable title to the buyer. *See Frady v. May,* 23 S.W.3d 558, 565 (Tex.App.—Fort Worth 2000, pet. denied). An option contract for the sale of land gives the optionee the right to elect to purchase the property at stated terms and within a specified period of time, but with no obligation to do so. *Rollingwood Trust No. 10 v. Schuhmann,* 984 S.W.2d 312, 315 (Tex.App.—Austin 1998, no pet.). No title passes at the time an option contract is formed, and time is of the essence. *Lefev-*

*ere v. Sears,* 629 S.W.2d 768, 770 (Tex.Civ. App.—El Paso 1981, no writ); *see also Hitchcock Properties, Inc. v. Levering,* 776 S.W.2d 236, 238 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (an option contract does not convey title but does convey an interest in the property similar to an easement or contingent future interest).

■ The primary test for determining whether a real estate agreement is an option contract or a contract for sale is whether the contract imposes a mandatory obligation upon the seller to accept a sum stipulated as liquidated damages in lieu of the purchaser's further liability. *Cadle Co. v. Harvey,* 46 S.W.3d 282, 286 (Tex.App.— Fort Worth 2001, pet. denied); *Gala Homes, Inc. v. Fritz,* 393 S.W.2d 409, 411 (Tex.Civ.App.—Waco 1965, writ ref'd n.r.e.); Billie J. Ellis, Jr. & Bennett I. Abramowitz, *Contracts as Commodities: Issues and Approaches in Regard to Commercial Real Estate "Earnest Money" and "Option" Contracts—A Texas Lawyer's Perspective,* 16 St. Mary's L.J. 541, 550–52 (1985); *see also Seelbach v. Clubb,* 7 S.W.3d 749, 756 (Tex.App.—Texarkana 1999, pet. denied) (when seller's only contractual remedy is retention of the earnest money, the agreement is an option). In the absence of such an obligation, it is a contract for sale. *Cadle Co.,* 46 S.W.3d at 286; *cf. Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.,* 163 Tex. 250, 353 S.W.2d 841, 843 (Tex.1962)(asking whether there is a provision that the vendor "must" accept the stipulated fund "in full settlement of the buyer's liabilities for default").[2]

---

2. The case of *Texlouana Producing & Ref. Co. v. Wall,* 257 S.W. 875 (Tex. Comm'n App. 1924, judgm't adopted), is frequently cited as early authority for the test. *See, e.g., Paramount Fire,* 163 Tex. at 253, 353 S.W.2d at 843. The *Texlouana* court stated that a provision obligating the seller to take liquidated damages may be "expressed or implied." *Texlouana,* 257 S.W. at 878. However, most courts today require such an obligation to be expressed in some form. *See Gala Homes,* 393 S.W.2d at 411; Ellis & Abramowitz, *supra* at 551–52.

■ The contract between TSP and USX in the present case contains the following provision:

### 5. *DEFAULT*

If Buyer fails to close the sale of the Premises as provided in this Agreement for any reason other than: (i) Seller's default hereunder or (ii) termination of this Agreement by Buyer which is expressly permitted herein, *the Total Deposit* without interest earned thereon *shall be paid to Seller as liquidated damages, and Seller shall terminate this Agreement.*

If Seller fails to close this sale for any reason except as expressly permitted herein, Seller shall, at Buyer's election, either grant specific performance to Buyer or return the Total Deposit without interest earned thereon to Buyer and terminate this Agreement.

*Upon termination* by either Seller or Buyer, *this Agreement shall be of no further force and effect.*

(Emphasis added). The plain language of this default provision requires the seller to accept the deposit as "liquidated damages" and then terminate the contract such that it has "no further force and effect." If the agreement has no further force and effect then any attempt to otherwise recover under the agreement, for specific performance or any other measure of damages, would fail. Revealingly, the provision expressly grants specific performance to the buyer upon the seller's default but does not grant the seller specific performance in the event of a buyer's default. *See Paramount Fire,* 163 Tex. at 253–54, 353 S.W.2d at 843 (noting that contract expressly granted specific performance to both sides in holding it was a contract for sale). We find that the contract at issue in this case was an option contract. The trial court erred in holding otherwise.

The remainder of the contract further supports this interpretation. TSP points out that the agreement is termed an "Agreement for the Sale of Real Estate" and that its language addresses issues relating to sale and purchase. However, as the ultimate concern of even an option contract is the sale of land, its language will by necessity speak to the sale and purchase of the property. Paragraph one of the contract begins: "Seller agrees to sell and Buyer agrees to buy . . . ." This language is prospective, suggesting that the actual sale may take place in the future but is not being effectuated by the present contract itself. *See Seelbach,* 7 S.W.3d at 756. Contrast this language with that scrutinized by the court in *Paramount Fire:* "Seller(s) 'sells and agrees to convey.'" *See Paramount Fire,* 163 Tex. at 252, 353 S.W.2d at 842. That language is present tense, suggesting the document itself brings about the sale. *See Seelbach,* 7 S.W.3d at 756 (examining language of real estate sales contract contained in 16 HEBERT S. KENDRICK & JOHN J. KENDRICK, JR., TEXAS TRANSACTION GUIDE: LEGAL FORMS § 70.200[2] (1999)). Therefore, although the contract at issue in the present case does, in fact, contain language of sale and purchase, the language is prospective and hence indicative of an option contract.

The contract contains no remedies for buyer's breach other than payment of the deposit to the seller. TSP suggests that it is relevant that the contract includes a provision under paragraph six that requires TSP to indemnify USX for any claims arising from TSP's investigation of the premises. This provision, however, is not related to damages for breach, but appears to be an unrelated provision that could stand on its own.

Additionally, paragraph two of the TSP/USX contract contains a series of clauses indicating that "[i]f the Premises is not

purchased on or before [a certain date]" an additional deposit will be required. The paragraph also sets varying prices for the sale of the land based on the time of the actual sale. Paragraphs one and two discuss alternative boundaries for the tract of land to be sold. These provisions make the contract read like an option contract, with the final terms of any future sale made optional or conditional. *See generally Mooney v. Ingram,* 547 S.W.2d 314, 317 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.)(it is not an enforceable contract for sale when essential terms are left for later determination and are not later determined).

■■■■■ Throughout the contract, time is made of the essence. In paragraph two, certain deposits must be timely made or the contract price goes up or the contract is eventually terminated. In paragraph twenty, it specifically states: "Time is of the essence with respect to the performance of all the terms, conditions and covenants of this Agreement." Time being of the essence is a hallmark of the option contract. *Smith v. Hues,* 540 S.W.2d 485, 488 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

■■■ TSP additionally contends that even if the agreement was an option contract and not a contract for sale, it still possessed an interest in the property sufficient to give it standing. TSP argues that all that is required for standing is that it have an interest in the property that the general public does not have and which is potentially damaged by the ordinance, citing *Hunt v. Bass,* 664 S.W.2d 323 (Tex. 1984). Although TSP pled the Uniform Declaratory Judgments Act, that act merely provides a procedural device for the determination of controversies already within the court's jurisdiction and does not itself grant or create jurisdiction. *Kennesaw Life & Acc. Ins. Co. v. Goss,* 694 S.W.2d 115, 117–18 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 1997) ("[a] court … *within its jurisdiction* has power"). TSP pled no causes of action not tied to the Private Real Property Rights Preservation Act. As discussed above, that act provides standing only for "owners" of property possessing "legal or equitable title." *See* TEX. GOV'T CODE ANN. §§ 2007.002, 2007.021. Although TSP may have certain rights in the property not possessed by the public at large, *e.g.,* an option to buy on particular terms, such claimed rights are not sufficient to give it equitable title. *See* 3 FRED A. LANGE ET AL, TEXAS PRACTICE: LAND TITLES AND TITLE EXAMINATION § 335 (2d ed. 1992) ("Equitable title" is distinguishable from a "mere equitable right."); *see also Graves v. Diehl,* 958 S.W.2d 468, 471 (Tex.App.—Houston [14th Dist.] 1997, no pet.)(distinguishing "equitable rights" from "equitable title"). The TSP/USX agreement was an option contract; hence, TSP did not have standing to attack the ordinance under the Private Real Property Rights Preservation Act.

The trial court erred in determining that the contract between TSP and USX was a contract for the sale of land and not merely an option contract. The court further erred in determining, on that basis, that TSP had standing to file the present lawsuit against the County. Accordingly, we sustain the County's first issue. Because we find that TSP did not, in fact, have standing to bring this lawsuit, we need not address the County's second issue attacking the trial court's substantive rulings.

We reverse the trial court's order decreeing that TSP had standing and render judgment dismissing all claims for want of jurisdiction.