**William Grant DORSETT, Appellant,**

v.

**Nancy Swanson CROSS, Appellee.**

**No. 01–01–00739–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 27, 2003.

Rehearing Overruled May 16, 2003.

---

Jeffrey Douglas Kyle, Christian, Smith & Jewell, Houston, Lynn J. Klement, Angleton, for Appellant.

Harry Herzog, Herzog, Carp & McManu, Houston, for Appellee.

Panel consists of Justices HEDGES, KEYES, and EVANS.[1]

## OPINION

EVELYN V. KEYES, Justice.

In this breach of contract case, Nancy Swanson Cross, plaintiff/appellee, sued William Grant Dorsett, defendant/appellant, to collect on a promissory note for the payment of securities, payable on demand, in the principal amount of $56,000 (the Note). On appeal, Dorsett challenges the sufficiency of the evidence to support the jury's findings and contends certain testimony was improperly admitted. We affirm.

### Factual & Procedural Background

This is a suit by Cross to collect the price of her stock pursuant to the Note executed in her favor by Dorsett. The Note was expressly made subject to the terms of an Agreement for Purchase and Sale of Stock dated July 1, 1993 (the Stock Sale Agreement). The Stock Sale Agreement was executed by Cross and three other persons as Sellers and by Dorsett as Purchaser of stock in Accent Services, Inc. (the Corporation).

Under the terms of the Stock Sale Agreement, the Sellers promised to transfer the stock into Dorsett's name, to deliver the stock certificates into escrow, and to make certain documents of the Corpora-

1. The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

tion set out in "Exhibit A" to the Stock Sale Agreement available for inspection by Dorsett so that he could perform due diligence. Dorsett promised to execute a promissory note in favor of each Seller for the purchase price of the stock and to deposit $10,000 into escrow as earnest money upon delivery of the stock to Sellers' attorney, to give written notice of receipt of the documents within three business days of their receipt, and to perform due diligence. The Stock Sale Agreement gave Dorsett 30 days after receipt of the documents to close the stock purchase transaction. If he elected not to close the transaction, he promised to deliver to the Sellers his written communication of his desire to rescind, at which point he would forfeit his $10,000 earnest money. If he elected to close, he promised to pay 20% cash down to each Seller and to substitute installment notes for the balance of the purchase price in place of the promissory notes executed in favor of the Sellers at the initial Closing.

Following the transfer of stock into Dorsett's name, the delivery of the stock to Sellers' attorney, and Dorsett's deposit of the $10,000 in earnest money into escrow, the Sellers made the documents listed in Exhibit "A" to the Stock Sale Agreement available for Dorset's due diligence inspection. Dorsett, however, failed to acknowledge their receipt, as required by the Stock Sale Agreement. He also refused to review the documents, and did not complete his due diligence. He neither closed the transaction within 30 days of receipt of the documents nor sent written notice of rescission to the Sellers; nor did he pay for the stock. After Cross made demand on Dorsett for payment for her stock pursuant to the Note, Dorsett announced that he was exercising his right of rescission. Cross filed this suit for recovery of the purchase price.

The trial court charged the jury to find: (a) whether Dorsett had failed to comply with the terms of the Note; and (b) if so, whether his failure to comply was excused by Cross's previous failure to comply with a material obligation of the Note or with the Stock Sale Agreement. The jury found that Dorsett failed to comply with the Note (Question No. 1) and that his lack of compliance with the Note was not excused by Cross's failure to comply with the Note (Question No. 2) or with the Stock Sale Agreement (Question No. 3). In determining the amount of damages, the jury was instructed to consider only the unpaid principal balance of the Note; it assessed damages in the amount of $56,000. The trial court entered judgment on the verdict.

## Sufficiency of the Evidence

Dorsett argues in his first and second points of error that (1) there is no evidence to support the jury's finding that he failed to comply with the terms of the $56,000 Note because the Note was expressly made subject to the provisions of the Stock Sale Agreement; the Stock Sale Agreement provided that he would conduct a due diligence analysis of documents reflecting the Corporation's financial condition; the Stock Sale Agreement did not impose any deadline on him for completion of his due diligence; and, because he never completed the required due diligence, there is no evidence he failed to comply with the Note; and (2) the jury's finding that he failed to comply with the terms of the Note does not constitute a basis for entry of judgment against him because the Stock Sale Agreement expressly limited his liability, if he did not close the stock purchase transaction, to the $10,000 earnest money he deposited with the Sellers. We consider these issues together.

**Standard of Review**

■ We may consider only the evidence and inferences that tend to support the jury's finding and must disregard all evidence and inferences to the contrary. *Southwest Key Program, Inc. v. Gil–Perez,* 81 S.W.3d 269, 274 (Tex.2002). Thus, we must examine the record only to find whether there is evidence that supports the jury's finding. *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002).

■ In deciding whether there is legally sufficient evidence to support the jury's finding on the issue of whether Dorsett failed to comply with the terms of the Note, we must first ascertain Dorsett's contractual obligations under that instrument. When interpreting a contract to determine the intention of the parties, all writings pertaining to the same transaction will be construed together. *See DeWitt County Electric Co-op., Inc. v. Parks,* 1 S.W.3d 96, 102 (Tex.1999). Because the Note expressly states that it is executed pursuant to the parties' Stock Sale Agreement, we must examine its provisions in the light of that Stock Sale Agreement. *Fort Worth Ind. Sch. Dist. v. Fort Worth,* 22 S.W.3d 831, 840–42 (Tex.2000).

**Breach of Contract and Excuse of Performance**

■ A promissory note is nothing more than a contract evincing an obligation to pay money. *Amarillo Nat'l Bank v. Dilday,* 693 S.W.2d 38, 41 (Tex.App.-Amarillo 1985, no writ). As such, the construction of its terms is controlled by the rules generally applicable to interpreting contracts. *Id.*

■ The elements of a breach of contract action are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Frost Nat'l Bank v. Burge,* 29 S.W.3d 580, 593 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A breach occurs when a party fails or refuses to do something he has promised to do. *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.,* 826 S.W.2d 638, 640 (Tex.App.-Houston [14th Dist.] 1992, no writ); *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). A cause of action for breach of a promise to pay arises when a demand for payment has been made and refused. *Intermedics,* 683 S.W.2d at 845.

■ One party's promise conditioned on satisfaction with another party's performance of a condition generally requires performance of the condition that is satisfactory in the exercise of honest judgment; the decision on the question of satisfactory performance must be made in good faith. *Atomic Fuel Extraction Corp. v. Slick's Estate,* 386 S.W.2d 180, 185 (Tex.Civ.App.-San Antonio 1964, writ ref'd n.r.e.). Prevention of performance by one party excuses performance by the other party, both of conditions precedent to performance and of promise. *O'Shea v. Int'l Bus. Mach. Corp.,* 578 S.W.2d 844, 846 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Atomic Fuel Extraction Corp.,* 386 S.W.2d at 186. When the obligation of a party to a contract depends upon a certain condition's being performed, and the fulfillment of the condition is prevented by the act of the other party, the condition is considered fulfilled. *Houston County v. Leo L. Landauer & Assocs., Inc.,* 424 S.W.2d 458, 464 (Tex.Civ.App.-Tyler 1968, writ ref'd n.r.e.).

■ When a contract has been substantially performed and an attempt to complete performance is refused, the refusal excuses any further attempt to perform by the party offering performance

and entitles that party to recover under the contract. *Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex.Civ.App.-Tyler 1975, writ dism'd by agreement); *Cox v. KTM Drilling, Inc.*, 395 S.W.2d 851, 853 (Tex.Civ. App.-Amarillo 1965, writ ref'd n.r.e.). A party who is in default may not complain of the recovery of damages by the other party, nor set up a subsequent default by the other party, nor urge such a subsequent default where the obligation of performance by one party presupposes the doing of some act by the other party which he fails or refuses to do. *Moore County Carbon Co. v. Whitten*, 140 S.W.2d 880, 883 (Tex.Civ.App.-Amarillo 1940, writ dism'd judgm't cor.).

### Conditions Precedent to Final Closing

Under the essential terms of the Stock Sale Agreement, several events had to occur before the consummation of the stock purchase transaction, hence before the Note became due and payable. These conditional events were as follows:

First, upon execution of the Stock Purchase Agreement, two things had to be done, as provided in paragraph 3(a) of the Stock Sale Agreement: (1) the Sellers had to deliver their stock to their attorney to be held by him in escrow until all stipulated amounts and notes have been paid; and (2) the Purchaser had to deliver his executed demand note to each of the Sellers. The Sellers agreed not to make demand for payment under the notes until after Purchaser completed his due diligence as defined in the Stock Sale Agreement.

Second, the Purchaser was required to complete his "due diligence" as defined in paragraph 5 the Stock Purchase Agreement. Paragraph 5 provided that the Purchaser had to notify the corporate secretary that he was the owner of the stock within three business days after the delivery of the stock to the Sellers' attorney; and he had to make demand that the stock be transferred to his name and that he be allowed to inspect the documents described in Exhibit A. Within three business days after being furnished the listed documents, the Purchaser had to give written notice of that fact to the Seller's attorney. The Purchaser had the right to rescind the transaction by delivering written notice to the Sellers. If he elected to rescind, his earnest money would have been forfeited. If, however, the Purchaser elected to close after making his due diligence examination, the earnest money would have been credited against his cash down payment at closing. The Purchaser had 30 days after receipt of the requested documents to close the transaction.

Third, under paragraph 3(b) of the Stock Sale Agreement, 30 days after Purchaser completed his due diligence as defined in the Stock Sale Agreement, Purchaser was required to pay a stipulated 20% cash down payment to each Seller and execute installment notes to be substituted for the original demand notes. The substitution of notes and the cash payment was to occur within 30 days after Purchaser conducted his due diligence of the financial records described in Exhibit "A."

In addition, paragraph 6 of the Stock Sale Agreement provided for security for performance and paragraph 7 acknowledged receipt of the earnest money from the Purchaser and provided that the earnest money would be forfeited "if Purchaser does not close this transaction under any circumstances."

### Performance of Conditions Precedent

The undisputed evidence shows that the parties completed the conditions set out in paragraph 3(a), but they did not complete the rest. That is, the Sellers did deliver the stock to their attorney, and

Dorsett did execute his demand notes and make a demand on the corporate secretary for the listed documents. The evidence is also undisputed that Dorsett did not notify the Sellers that he had received the requested documents.

There was evidence from which the jury reasonably could have inferred that Cross and the other Sellers produced the documents requested by Dorsett for his due diligence inspection but that he refused to review them. That is, there is evidence from which the jury could have concluded that Dorsett failed to fulfill his obligation to perform due diligence, which was a condition precedent to closing the stock purchase transaction. Moreover, there is evidence from which the jury could have concluded that Dorsett failed either to exercise his right to rescind or to close the stock transaction within 30 days after receipt of the documents proffered by the Sellers, as required by paragraph 5 of the Stock Sale Agreement. Based on this evidence, and the fact that Dorsett did not notify Cross of his intent to rescind until after she sought payment of the Note, the jury could reasonably have decided that Dorsett's failure to complete his due diligence examination was not due to any fault on the part of Cross or the other Sellers. Although there is evidence that Dorsett held himself out to be the owner of the stock, it is undisputed that he did not pay the cash down payment or execute the installment notes in place of the original notes.

Dorsett, however, contends (1) the Stock Sale Agreement does not specify any time limit within which he was required to give Cross notice of his intent to rescind; (2) the Stock Sale Agreement accorded him an unrestricted right to rescind if the stock purchase transaction failed to close "under any circumstances," on penalty of forfeiting only the earnest money; and (3) because the transaction did not close, he was entitled to rescind, and the Sellers' sole remedy was to retain the earnest money deposited with their attorney.

Dorsett's interpretation of the Stock Sale Agreement ignores both the plain language of the Stock Sale Agreement and the legal effect of his failure to perform the conditions precedent to Cross's right to demand payment for her stock under the Note. Dorsett relies on paragraph 5 of the Stock Sale Agreement, providing for "Due Diligence," which states in relevant part:

> After the records described in Exhibit "A" have been furnished to Purchaser by the Corporation, Purchaser shall give written notice of such fact to Sellers' attorney within three (3) business days therefrom. Purchaser shall have the right to rescind the transaction by delivering his written communication to Sellers of his desire to rescind this Agreement. The Earnest Money shall be forfeited by Purchaser in case of his decision to rescind; if, however, Purchaser desires to close the transaction after making such inspection, the Earnest Money shall be credited to the cash amount Purchaser paid at Closing. ***Purchaser shall have thirty (30) days to close the transaction after receipt of the documents listed in Exhibit "A."***

Stock Sale Agreement, paragraph 5 (emphasis added). He also relies on paragraph 7, which provides:

> Sellers acknowledge receipt from Purchaser of the sum of [$10,000] to be placed in escrow with [Sellers' attorney] to bind this Agreement. The Earnest Money shall be forfeited if Purchaser does not close this transaction under any circumstances.

Stock Sale Agreement, paragraph 7.

The rules of contract interpretation require us to give the language in an

agreement its plain grammatical meaning unless to do so would defeat the intent of the parties. *DeWitt County Electric Co-op.*, 1 S.W.3d at 101. When the provisions of a contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983). To achieve this objective, courts should examine and consider the entire contract to harmonize and give effect to all its provisions, so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). In harmonizing contractual provisions, terms stated earlier in an agreement must be favored over subsequent terms. *Id.*

 The Stock Sale Agreement did not give Dorsett an unrestricted right to rescind at any time, but expressly limited that right to the 30 days following his receipt of the documents listed in Exhibit A, during which time he was obligated to complete his due diligence and either rescind or close the transaction. Instead, he chose not to complete his due diligence, not to rescind, and not to close the transaction. In other words, he repudiated the contract. A party to a contract may not set up his own breach to relieve himself of his contractual obligations; nor may he set up his breach as the basis for rescission of the contract or as the ground for his own recovery. *Presley v. Cooper*, 278 S.W.2d 237, 241 (Tex.Civ.App.-Amarillo), *rev'd on other grounds*, 284 S.W.2d 138, 155 Tex. 168 (Tex.1955).

The only way to find that Dorsett did *not* lose his right to rescind by failing to complete his due diligence and either rescind or close within 30 days after receipt of the documents proffered by the Sellers is to find that the language in paragraph 7 of the Stock Sale Agreement, which provides that "[t]he Earnest Money shall be forfeited if Purchaser does not close this transaction under any circumstances," permits untimely rescission—even after failure to perform and demand for payment by the performing party—and limits the Sellers' recovery to the Earnest Money. However, the foregoing principles of contract interpretation prohibit us from reading paragraph 7 of the Stock Sale Agreement in such a way, since it renders meaningless the language concerning the rights and obligations of the parties set out earlier in paragraph 5.

Paragraph 7 of the Stock Sale Agreement, providing that Dorsett could rescind if the stock purchase transaction did not close "for any reason," should be read as limited by the provision in paragraph 5 that Dorsett had 30 days from delivery of the documents listed in Exhibit A to complete his due diligence and elect either to rescind or to close the stock purchase. If the stock purchase transaction failed to close "for any reason"—including Dorsett's prior breach or that of the Sellers—Dorsett forfeited the $10,000. This forfeiture does not, however, preclude actions by the Sellers to collect on the Notes under ordinary principles of contract law in the event of Dorsett's repudiation of the contract.

Because the closing of the stock sale transaction was conditioned on the completion of Dorsett's due diligence, Dorsett was obligated to complete his due diligence in good faith, not to frustrate its performance. *See Atomic Fuel Extraction Corp.*, 386 S.W.2d at 185. Dorsett's refusal to review the documents proffered to him, to complete his due diligence, and either to rescind or to close the stock purchase transaction within 30 days after delivery of the documents constitutes repudiation of the contract, excusing any further attempt by Cross to perform, causing the due diligence and the stock sale to count as having been completed, and entitling Cross to seek recovery of the stock

price pursuant to the Note. *See Longview Constr. & Dev.*, 523 S.W.2d at 779; *Cox*, 395 S.W.2d at 853; *Atomic Fuel Extraction*, 386 S.W.2d at 185.

Because Dorsett defaulted on the Note by failing to fulfill his promise to conduct due diligence in good faith within 30 days of his receipt of the documents and by frustrating Cross's further performance, he is not entitled to urge the failure to close the stock transaction (which he had frustrated) as grounds for his retaining the right to rescind; nor is he entitled to complain of the recovery of damages by Cross. *See Moore County Carbon Co.*, 140 S.W.2d at 883; *see also Hodges v. Braun*, 654 S.W.2d 542, 545 (Tex.App.-Dallas 1983, writ ref'd n.r.e.); *Intermedics, Inc.*, 683 S.W.2d at 845; *Leo L. Landauer & Assocs.*, 424 S.W.2d at 464.

We overrule Dorsett's first two points of error.

### Cross's Attorney's Testimony

In point of error three, Dorsett complains that Cross's attorney, Harry Herzog, improperly testified about and commented on an alleged admission by Dorsett that he bought Cross's stock.

Dorsett asserts that Herzog was an unidentified fact witness who was permitted to testify over his objection. He also asserts that Herzog's testimony was calculated to cause and probably did cause the rendition of an improper judgment. Herzog was identified as both a fact witness and an expert witness by Cross in her "Responses to the First Set of Interrogatories of William Grant Dorsett," as noted in the First Supplemental Clerk's Record. Therefore, we do not agree with appellant's complaint that Herzog was an unidentified fact witness.

 Notwithstanding his prior identification as a witness, a lawyer shall not accept or continue employment as an advocate if he knows or believes that he may be a witness necessary to establish an essential fact on behalf of his client. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art X, § 9). Although there are five exceptions, not all of Herzog's testimony falls within the exceptions. *See id.* at 3.08(a)(1)-(5). However, to warrant reversal on appeal, the complaining party must show that the trial court's ruling harmed him or caused an improper judgment to be rendered. *See Warrilow v. Norrell*, 791 S.W.2d 515, 521 (Tex.App.-Corpus Christi 1989, writ denied). Dorsett asserts that Herzog's testimony harmed him in that it was the only evidence that Dorsett admitted to buying Cross's stock.

We do not agree with Dorsett's contention that Herzog's testimony was the only evidence that Dorsett admitted to buying Cross's stock. Other evidence was presented from which the jury could have reasonably found that Dorsett owned the stock, such as appellant's letter to Dan Swanson, in which Dorsett asked Swanson to try to sell the stock Dorsett owned. Additionally, there was sufficient evidence presented and testimony from other witnesses, as discussed above, for the jury to make its decision. Moreover, Dorsett's holding himself out to be the owner of the stock is not material to our disposition of this case.

We overrule appellant's third point of error.

We affirm the judgment of the trial court.

Justice FRANK G. EVANS dissenting.

FRANK G. EVANS, Justice, dissenting (Assigned).

I respectfully dissent, because in my opinion the trial court's judgment should be reversed and rendered on the grounds urged in appellant's first two points of error.

Specifically, I disagree with the majority's conclusion that the terms of the Stock Sale Agreement obligated appellant to close the stock purchase transaction if he did not give notice of his intent to rescind within 30 days after being delivered the financial documents. According to my reading, the Stock Sale Agreement did not obligate the appellant to consummate the stock purchase transaction; it simply gave him the right to do so. I find no provision in the Stock Sale Agreement, including paragraph number 5, that imposes a time limit for appellant to give notice of intent to rescind.

The Stock Sale Agreement, paragraph 5, provides:

### DUE DILIGENCE

5. After the records described in Exhibit "A" have been furnished to Purchaser by the Corporation, Purchaser shall give written notice of such fact to Sellers' attorney within three (3) business days therefrom. Purchaser shall have the right to rescind the transaction by delivering his written communication to Sellers of his desire to rescind this Agreement. The Earnest Money shall be forfeited by Purchaser in case of his decision to rescind; if, however, Purchaser desires to close the transaction after making such inspection, the Earnest Money shall be credited to the cash amount Purchaser paid at Closing. Purchaser shall have thirty (30) days to close the transaction after receipt of the documents listed in "Exhibit A."

This paragraph provides that "if ... [the] Purchaser desires to close the transaction" after making the due diligence inspection, he shall have 30 days after receipt of the listed documents within which to do so. I find no language in this paragraph or elsewhere in the Stock Sale Agreement that obligates the Purchaser to consummate the purchase transaction or which imposes any time limit for his giving notice of his intent to rescind.

The evidence is undisputed that appellant elected not to close the transaction and that he never signed the installment notes or paid the cash down payment. Although the evidence indicates the stock was transferred into appellant's name on the corporate books, it is undisputed that such transfer was effected solely for the purpose of giving the appellant standing, as a minority stockholder, to gain access to the company's financial records so he could make a due diligence investigation. The appellant's rights with respect to the stock were fixed by the terms of the Stock Sale Agreement, and according to my reading, he acquired no ownership rights in the stock unless and until he closed the stock purchase transaction. Because the appellant elected not to close the transaction and instead gave notice of his intent to rescind, he simply forfeited his right to the earnest money deposited with the appellee's attorney.

I recognize that in some cases a purchaser under a contract of sale may be held liable for the agreed purchase price, not just for the earnest money. *See e.g., Chambers County v. TSP Development, Ltd.,* 63 S.W.3d 835, 838 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). But in those cases, the contract of sale did not expressly or impliedly limit the purchaser's liability to the amount of the earnest money. Here, the Stock Sale Agreement expressly states that the Purchaser "shall

have the right to rescind the transaction by delivering his written communication to Sellers of his desire to rescind this Agreement." The Stock Sale Agreement then states that "[t]he Earnest Money shall be forfeited by Purchaser in case of his decision to rescind; if, however, Purchaser desires to close the transaction after making such inspection, the Earnest Money shall be credited to the cash amount Purchaser paid at Closing." In a separate paragraph (no. 7), the Stock Sale Agreement provides that if the Purchaser fails to close the sale, he will forfeit his earnest money "under any circumstances."

The appellant's demand note, which was expressly made subject to the terms of the Stock Sale Agreement, also provides that "[i]n the event Maker elects not to complete the transaction after his period of due diligence contemplated by the Stock Sale Agreement and so notifies [Payee], then this Note shall become null and void."

In drafting the terms of the Note and the Stock Sale Agreement, the Sellers could easily have set a time limit for the appellant to complete the due diligence investigation and for the appellant to give notice of his intent to rescind. The appellee's testimony shows the Sellers consciously decided *not* to place any time limit on the Purchaser's completion of the due diligence because they were uncertain about how much time would be required to obtain the company's financial documents. Because the parties chose not to impose a time limitation on appellant, this court should accept their agreement as written. *See Wood Motor Co., Inc. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 185 (1951) (unambiguous language giving unqualified right to terminate contract must be enforced as written).

Because the Stock Sale Agreement expressly provides that appellant has the right to rescind the transaction and does not set any time limit for delivering his written notification to the Sellers stating his desire to rescind, I cannot agree with the majority's conclusion that appellant had 30 days from delivery of the documents "to complete his due diligence and elect either to rescind or to close the transaction." In my opinion, the majority's interpretation is incorrect because the Stock Sale Agreement provides only that, if the Purchaser decides to close the transaction, he must do so within 30 days after receipt of the designated financial documents.

I also disagree with the majority's conclusion that the Purchaser was obligated to exercise "good faith" in completing the due diligence inspection. First, I do not find any language in the Stock Sale Agreement that obligates the Purchaser to conduct a due diligence investigation. The Stock Sale Agreement simply gives him the right to conduct such an investigation. Because the Stock Sale Agreement did not obligate appellant to conduct the investigation, he obviously had no contractual duty to complete the investigation in good faith. *See Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 606–07 (Tex.1998); *John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 17 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

In summary, I believe the undisputed evidence shows the following: (1) the demand note was expressly made subject to the terms of the Stock Sale Agreement, and the Note provided it would become null and void if the appellant elected not to complete the transaction and gave notice of his intent to rescind; (2) the Stock Sale Agreement gave appellant the right to conduct a due diligence investigation before deciding whether to close the transaction; (3) the Stock Sale Agreement gave appellant the right to close the transaction if he did so within 30 days after receipt of the listed financial documents; (4) the Stock

Sale Agreement gave appellant the right to rescind the transaction but did not impose a time limit for his giving of such notice; and (5) appellant never closed the transaction, made any payment of cash down payment, or executed the installment notes; instead he gave the Sellers notice of his intent to rescind.

Accordingly, I would hold that appellant's liability for failing to close the transaction was the forfeiture of his earnest money, which had been deposited with the Sellers' attorney. *See Hott v. Pearcy/Christon, Inc.*, 663 S.W.2d 851, 851 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (effect of limiting purchaser's liability results in an option to purchase, revocable within a specified term, unless and until some additional consideration is paid).