COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-388-CV

 

 

WILLIAM L. HUNTLEY                                                          APPELLANT

 

                                                   V.

 

ENON LIMITED PARTNERSHIP,                                                 APPELLEE

A
TEXAS LIMITED PARTNERSHIP

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








This appeal concerns a
dispute over $75,000 in earnest money deposited by Appellant William L. Huntley
(AHuntley@) pursuant
to a contract entered into with Appellee Enon Limited Partnership (AEnon@), a Texas
Limited Partnership, for the purchase of a shopping center.  Huntley terminated the contract before
closing, and both parties claimed that they were entitled to the earnest money.  After a bench trial, the trial court entered
a judgment ordering that Enon recover the earnest money.  In nine issues, Huntley challenges the legal
and factual sufficiency of the evidence to support certain findings made by the
trial court, arguing that he, and not Enon, is entitled to the earnest
money.  Because we hold that Huntley is
entitled to the earnest money, we reverse and remand.

II.  Factual and Procedural Background

Huntley invests in real
estate properties.  In April 2001,
Huntley entered into a ACommercial
Contract of Sale@ (the AContract@) with Enon
for the purchase of a strip shopping center owned by Enon and located in
Arlington. 

Earnest Money

Along with a purchase price
of $2,400,000, the Contract required Huntley to make an earnest money deposit
of $25,000 with American Title Company, which he did, and designated $100 of
the earnest money as non-refundable. 
Section 4A of the Contract provided for the following contingency
regarding the earnest money:  AIf this Contract is proper[l]y terminated by [Huntley] pursuant to a
right of termination granted to [Huntley] by any provision of this Contract,
the Earnest Money, less the non-refundable portion, will be promptly returned
to [Huntley], and the parties will have no further rights or obligations under
this Contract . . . .@

 

 








Loan Assumption

Regarding financing and loan
assumption, Addendum B-1 to the Contract stated that Huntley would assume the
unpaid principal balance of the first lien promissory note payable to Midland
Loan (AMidland@), the
lender, and the obligations imposed by the deed of trust that secured the
note.  Section 12F provided Huntley with
a right of termination vis-a-vis the loan assumption.  It stated,

If the lender=s written consent is not obtained at or before the Closing, [Huntley]
may terminate this Contract by delivering a written termination notice to
Seller whereupon the refundable portion of the Earnest Money will be promptly
returned to Purchaser and the parties will have no further rights or
obligations under this Contract (except for any that expressly survive the
termination).

Enon=s Remedy

Enon=s remedies for Huntley=s failure to close on the Contract were set out in Section 13B.  It provided, AIf [Huntley] fails to close this Contract for any reason except Seller=s default or the termination of this Contract pursuant to a right
to terminate set forth in this Contract, [Huntley] will be in default and
[Enon] shall elect one of the following, as [Enon=s] sole remedy . . . .@ [Emphasis added.]  Only box (4)
was checked.  Box (4) provided that Enon
may A[t]erminate th[e] Contract and immediately receive the Earnest Money
as liquidated damages for [Huntley=s] breach of th[e] Contract.@








Integration Clause

Section 16F of the Contract
stated that the Contract Acontains the
complete agreement between the parties with respect to the Property and cannot
be varied except by written agreement.@  Furthermore, the parties
agreed that there Aare no oral
agreements, understandings, representations or warranties made by the parties
which are not expressly set forth in this Contract.@

Strict Compliance

Section 16I of the Contract
states that A[s]trict
compliance with the times for performance is required.@

Amendments to the Contract








On or about May 22, 2001,
Huntley and Enon executed a AFirst Amendment@ to the
Contract.  The First Amendment, among
other things, set the loan assumption approval deadline at Ano later than September 15, 2001.@    On or about August 7, 2001,
Huntley and Enon executed a ASecond Amendment@ to the
Contract, which required that Midland approve Huntley=s assumption of the first note without any type of liability for
environmental issues, increased the earnest money amount to $75,000, and
extended the loan assumption approval deadline date to September 30, 2001.  The Second Amendment stated, AIt is understood that these funds [the earnest money] are
nonrefundable subject only to loan assumption.@  [Emphasis added.]  Huntley deposited the additional $50,000 in
earnest money with the title company. 
The Second Amendment stated that with the exception of the changes
therein that superceded the Contract and the AFirst Amendment,@ all other
terms and conditions remained the same.

Midland=s Loan Assumption Approval

Pursuant to the Contract,
Midland faxed a letter to Huntley on September 28, 2001 indicating that it had
approved Huntley=s assumption
of the note.  Nothing in the letter
indicated the terms and conditions upon which Midland had approved the loan
assumption.[1]

By commitment letter dated
October 3, 2001, Midland informed Huntley and Enon that it had approved Huntley=s assumption of the note.  In that
letter, however, Midland conditioned its approval upon a number of terms,
including the following:








(a)
Bob J. Bryant will not be released from liability under the Unconditional
Guarantee of Payment and Performance for any loss due to hazardous materials
and James A. Ryffel will be required to execute a similar agreement.  William L. Huntley will be required to
execute a similar agreement effective from the transfer of the Property.

 

(b)
The Assumptor will assume all of the obligations and liabilities under the loan
documents.

 

Enon signed and accepted the approval letter;
Huntley did not.

Termination Notice and
Subsequent Loan Approval

On November 6, 2001, Huntley
provided Enon with written notice terminating the Contract and instructing the
escrow to return his earnest money deposits. 
The notice states, AThis cancellation is based on the Second Amendment to the contract,
where it states in #1 that I would not be required to assume any type of environmental
liability.@

On November 8, two days after
Huntley had provided notice of termination of the Contract, Midland delivered a
revised loan assumption agreement that dropped Huntley=s environmental guarantee for the loan assumption.  Enon accepted and signed the document;
Huntley did not.

Procedural History








Enon sued Huntley for breach
of contract and to enforce the liquidated damages provision in the Contract.  Huntley counterclaimed for a refund of the
earnest money.  Trial was to the
court.  Only two witnesses were called:  Huntley and James Ryffel, one of Enon=s limited partners.  Huntley
testified that he thought that the Contract expired on September 30, 2001,
because Midland had not approved his assumption of the existing loan without an
environmental liability guarantee and because the eventual guarantee received
on October 3, 2001, which required Huntley to assume liability for
environmental issues, was untimely. 
Ryffel testified that the $75,000 in earnest money became nonrefundable
upon the signing of the Second Amendment and that the liquidated damages remedy
in section 13B of the Contract makes the contract an option contract.  The parties stipulated to and the trial court
admitted sixty exhibits containing the Contract, amendments, and various
correspondence. The trial court rendered judgment for Enon, ordering the title
company to pay Enon the earnest money, and awarded Enon its attorney=s fees.  This appeal followed.

III.  Termination of the Contract and Earnest Money








In nine issues, divided into
sub-issues, Huntley challenges certain findings of fact and conclusions of law
made by the trial court, which we set out below. Huntley acknowledges that his
many issues can be broken down into two primary arguments:  (1) Huntley had a right to terminate the
Contract when Midland required an environmental guaranty (Issues 1-5) and (2)
Huntley was entitled to a refund of the earnest money upon exercising his right
of termination under the Contract (Issues 6-9). 
We address Huntley=s issues
within the context of these global arguments.

A.  Standard of Review

Findings of fact in a case
tried to the court have the same force and dignity as a jury=s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  Findings of fact are not conclusive when a
complete reporter=s record
appears in the appellate record, as in this case.  City of Corpus Christi v. Taylor, 126
S.W.3d 712, 717 (Tex. App.CCorpus Christi 2004, pet. withdrawn). 
The trial court=s findings
of fact are reviewable for legal and factual sufficiency of the evidence to
support them by the same standards that are applied in reviewing evidence
supporting a jury=s
answer.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996).








A legal sufficiency challenge
may only be sustained when:  (1) the
record discloses a complete absence of evidence of a vital fact; (2) the court
is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960).  Evidence is legally sufficient if it would
enable reasonable and fair-minded people to reach the verdict under
review.  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).  We
credit favorable evidence if reasonable jurors could, and disregard contrary
evidence unless jurors could not.  Id.        A trial court=s conclusions of law are reviewed de novo as legal questions.  Boyd v. Boyd, 67 S.W.3d 398, 404 (Tex.
App.CFort Worth 2002, no pet.).  We
accord no deference to the lower court=s decision.  Quick v. City of
Austin, 7 S.W.3d 109, 116 (Tex. 1998). 
Conclusions of law will be upheld on appeal if the judgment can be
sustained on any legal theory supported by the evidence.  Boyd, 67 S.W.3d at 404.

B.  Contract Interpretation








We apply well established rules
of contract interpretation when construing the Contract and its
amendments.  Specifically, when
construing a written contract, our primary concern is to ascertain the true
intentions of the parties as expressed in the instrument.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  We must examine and
consider the entire writing in an effort to harmonize and give effect to all
provisions so that none are rendered meaningless.  J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 229 (Tex. 2003); Coker, 650 S.W.2d at 393.  If the written instrument is so worded that
it can be given a definite or certain legal meaning, then the contract may be
construed as a matter of law.  Coker,
650 S.W.2d at 393.  Here, there is no
issue or argument that the Contract and its amendments are ambiguous.

C.  Huntley=s Right to Terminate the Contract

Huntley argues that he had a
right to terminate the Contract when Midland required an environmental
guaranty.  He argues that the evidence is
legally insufficient to support the trial court=s first, fifth, sixth, seventh, and eighth findings of fact and
conclusions of law, which are as follows:

1.
[A]ll conditions precedent have been met or have been performed.

 

. . . .

 

5.  In September 2001, the contract was extended
orally, and the closing date extended; but no other material or essential terms
of the contract were changed by this oral extension.

 

6.  The buyer, defendant William L. Huntley,
failed to close the sale by the date set for closing.

 

7.  The buyer=s failure to complete the
sale was not excused by any terms of the contract.  No term of the contract operated to permit
terminat[ion] by the buyer.

 

8.  The contract was conditioned only on approval
by the bank of assumption of the loan by Huntley.  The bank did approve the assumption.  While the bank, at one time, required an
environmental guaranty; at the request of the seller, the bank waived any
requirement of an environmental guaranty.[2]

 








Findings of fact and conclusions of law numbers
five, seven, and eight (challenged in Huntley=s second, fourth, and fifth issues) are dispositive to our
review.  We agree that Huntley had a
right to terminate the Contract because the evidence is legally insufficient to
support finding of fact number five and because conclusions of law numbers
seven and eight are erroneous as a matter of law.  The evidence demonstrates that Huntley was
permitted to terminate the Contract, that Midland waived the environmental
guaranty only after Huntley terminated the Contract, and that the loan
assumption deadline was not extended orally.








We first address the trial
court=s conclusions of law number seven and the first sentence of number
eight.  Addendum B-1 to the Contract
required Huntley to assume the unpaid principal balance of the first note
payable to Midland, and Section 12F of the Contract permitted Huntley to
terminate the Contract by written notice if Midland=s consent to the loan assumption was not obtained at or before
closing.  Addendum B-1 provided that Huntley
Ashall assume@ the
loan.  There are no conditions.  The First and Second Amendments to the
Contract altered certain portions of the Contract.  The First Amendment set the loan approval
deadline at September 15, 2001, and the Second Amendment to the Contract
extended the deadline to September 30, 2001. 
In addition to the approval deadline, the Second Amendment required that
the loan assumption be approved by Midland without Huntley assuming any
liability for environmental issues.








Enon argues that Huntley did
not have a right to terminate the Contract and that Huntley=s subsequent termination of the Contract constituted a  breach of the Contract because Midland
approved Huntley=s assumption
of the loan. Enon=s argument,
however, is unpersuasive because it ignores the Second Amendment=s requirement that Huntley assume the loan without any liability for
environmental issues.  Enon must base its
approval argument on either the initial approval notice dated September 28,
2001, the October 3, 2001, approval notice, or the approval notice dated
November 8, 2001.  Although the September
28 approval notice indicates that Midland had approved the loan assumption, it
does not indicate any of the terms or conditions upon which the loan assumption
had been approved.  Conversely, the
letter faxed by Midland on October 3 set forth the conditions upon which the
loan assumption had been approved, including that Huntley assume liability for
environmental issues.  The November 8
approval notice waived Huntley=s environmental liability guarantee. 
      Because the October 3 letter
required Huntley to assume environmental liability and because the November 8
letter expressly waived environmental liability, it is clear that the September
28 letter did not serve as Midland=s approval of the loan assumption absent a requirement that Huntley
assume liability for environmental issues as required by the Second Amendment,
but was, indeed, directly contrary to the express requirement of the Second
Amendment that the loan assumption be free of any such assumption of
environmental liability.  Midland
withdrew its requirement that Huntley assume environmental liability in the
November 8 letter, but this was more than a month after the September 30
deadline set by the Second Amendment requiring that Midland approve Huntley=s assumption of Enon=s loan without any environmental liability and two days after Huntley
had provided written notice terminating the Contract on November 6, 2001.








Section 12F provided Huntley
with a right to terminate the Contract if approval was not obtained.  Ryffel acknowledged that there were three
requirements for the assumption of the loan as contemplated by the Second
Amendment:  (1) approval by Midland; (2)
without requiring a guaranty from Huntley for environmental issues; and (3)
approving the loan assumption by the deadline, September 30, 2001.  But Midland did not approve Huntley=s loan assumption without requiring an environmental liability
guarantee before September 30, 2001. 
Consequently, Huntley was entitled to give written notice terminating
the Contract, which he did on November 6, 2001. 
Moreover, Midland=s waiver of
Huntley=s environmental liability guarantee in its November 8, 2001, approval
of Huntley=s loan
assumption was untimely.  Accordingly,
the trial court=s conclusion
of law number seven that Huntley=s failure to complete the sale was not excused by any terms of the
Contract and that no term of the Contract permitted Huntley to terminate the
Contract is erroneous as a matter of law. 
In addition, the trial court=s conclusion of law number eight that the Contract was conditioned only
on Midland=s approval
of the loan assumption is also erroneous as a matter of law.  We hold that the Contract gave Huntley a
right of termination and that the Contract=s condition approving Huntley=s loan assumption without an environmental guarantee was not waived by
Midland until after Huntley properly terminated the Contract.  We sustain Huntley=s fourth and fifth issues.








Enon nonetheless argues that
the parties mutually extended the deadline for Midland=s approval by an oral modification. 
This is the trial court=s finding of fact number five. 
Enon refers generally to phone conversations and correspondence between
the parties during October 2001, negotiations as to terms of a proposed
environmental indemnity agreement, discussions about repairs that Huntley
required to be made to the property, and a lack of any indication by Huntley
that he intended to terminate the Contract. 
None of this, however, is evidence of an oral modification of the loan
assumption deadline.  The correspondence
does not state that the deadline for the approval of the loan assumption has
been extended, and it is not a reasonable inference that a lack of any
indication by Huntley that he was intending to terminate the Contract means
that the parties were extending the loan assumption approval deadline.  Moreover, Section 16F of the Contract
provides that there are no oral agreements or understandings made by the
parties that are not expressly set forth in the Contract.  The Contract=s integration clause thus effectively precludes Enon=s argument.  Accordingly, the
evidence is legally insufficient to support finding of fact number five.[3]
 We sustain Huntley=s second issue.      D.  Huntley=s Refund of the Earnest Money

Having determined that
Huntley appropriately terminated the Contract, we now turn to his second argument
that he, not Enon, was entitled to a refund of the earnest money.  Huntley argues that the evidence is legally
insufficient to support the trial court=s ninth, tenth, and thirteenth findings of fact and conclusions of
law, which are as follows:

9.  [T]he plaintiff, Enon L.P., expended funds
making substantial improvements and repairs to the property requested by
Huntley.

 

10.  Huntley=s failure to close was a
breach of contract.

 

. . . .

 








13.  [T]he contract was an Aoption
contract,@ and
Enon=s,
L.P.=s,
only remedy is the payment to it of the non-refundable deposit of $75,000.00. .
. . Having then terminated the contract and demanding the deposit, plaintiff is
entitled to that sum, plus any accrued interest, currently on deposit with
American Title Company.

 

Huntley further argues that the trial court erred
by adopting Enon=s
interpretation of the Second Amendment because that interpretation is
unreasonable, unsupported by legally and factually sufficient evidence, and
would render the Second Amendment meaningless. 
Conclusion of law number thirteen (challenged in Huntley=s ninth issue) is dispositive to our review.  We agree that Huntley was entitled to a
refund of the earnest money upon terminating the Contract; conclusion of law
number thirteen is erroneous as a matter of law.

The Contract required Huntley
to make an earnest money deposit of $25,000. 
$100 was designated as nonrefundable. 
Section 4A provided that the earnest money, less the nonrefundable
portion, would be returned to Huntley if he properly terminated the
Contract.  Section 12F likewise stated
that the refundable portion of the earnest money would be returned to Huntley
if the lender=s consent
for the loan assumption was not obtained and Huntley provided written notice
that he was terminating the Contract.








The Second Amendment
increased the earnest money to $75,000 and provided, AIt is understood that these funds are nonrefundable subject only to
loan assumption.@  [Emphasis added.]  The Asubject only to loan assumption@ means that Huntley=s assumption of the loan must have been approved in order for the
earnest money to be nonrefundable.  As
discussed above, Midland required Huntley to assume liability for environmental
issues as a condition to approving his loan assumption despite the parties= agreement in the Second Amendment that the loan assumption be
approved without an environmental guarantee. 
Huntley subsequently terminated the Contract before Midland waived the
environmental guarantee condition. 
Therefore, Huntley never assumed the original loan.  Under the clear and unambiguous terms of the
Contract, Huntley is entitled to a refund of the earnest money.[4]








Enon argues that the earnest
money became nonrefundable when Huntley signed the Second Amendment.  Consistent with Ryffel=s testimony, Enon argues that there were only two possible
dispositions with the earnest money: (1) the parties could have closed, and the
earnest money would have been applied to the purchase price, or (2) the
transaction would not close, and the seller (Enon) would retain the earnest
money.  Enon=s argument completely fails to recognize and address that part of the
Second Amendment stating that the earnest money was nonrefundable Asubject only to loan assumption.@  The Second Amendment
conditions the nonrefundable status of the earnest money on Midland=s approval of Huntley=s loan assumption by using the phrase Asubject only to loan assumption.@[5]

Enon might be relying on
Section 13B of the Contract to support its argument that the earnest money
became nonrefundable upon Huntley=s signing of the Second Amendment. 
Enon also argues that if Huntley=s termination of the Contract was not the result of Enon=s breach, then the termination would trigger its right to receive the
earnest money as liquidated damages. 
This argument is also based upon Section 13B of the Contract.  But Section 13B provides that Enon is
entitled to receive the earnest money as liquidated damages A[i]f [Huntley] fails to close th[e] Contract for any reason except Seller=s default or the termination of this Contract pursuant to a
right to terminate set forth in this Contract.@  [Emphasis added.]  Huntley terminated the Contract pursuant to a
right of termination set forth in the Contract. 
Section 13B=s remedy
allowing Enon to recover the earnest money as liquidated damages was therefore
never triggered.








Enon also argues that
numerous cases Ahold that
when the seller=s only
remedy is retention of the earnest money as liquidated damages, then a contract
is an option contract.@  Enon thus contends that it was entitled to
receive the earnest money because the Contract was an option contract.  See Chambers County v. TSP Dev.,
Ltd., 63 S.W.3d 835, 838 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).  Although Enon cites an accurate statement of
law, it does not alter the clear terms of the Contract and Second Amendment,
which set conditions on Midland=s approval of Huntley=s loan assumption and allow for the earnest money to be refunded to
Huntley.  Both parties signed the
Contract, and both parties signed the Second Amendment.  Long established rules of contract
interpretation require us to consider the entire Contract and to give effect to
all of its provisions so that none are rendered meaningless.  See Coker, 650 S.W.2d at 393.  Accepting Enon=s argument that it is entitled to receive the earnest money as
liquidated damages because the Contract is an option contract would violate
these rules.  The trial court=s conclusion of law number thirteen is erroneous as a matter of
law.  We hold that Huntley was entitled
to a refund of the earnest money after he terminated the Contract.  We sustain Huntley=s ninth issue.

IV.  Conclusion








The trial court=s seventh, eighth, and thirteenth conclusions of law are erroneous as
a matter of law; Huntley was permitted to terminate the Contract, Midland
waived the environmental guarantee only after Huntley terminated the Contract,
and Huntley was entitled to a refund of the earnest money after terminating the
Contract.  The evidence is legally
insufficient to support the trial court=s fifth finding of fact; the loan assumption deadline was not extended
orally.  Having sustained Huntley=s second, fourth, fifth, and ninth issues, we reverse and remand to
the trial court for further proceedings.[6]  See Tex.
R. App. P. 43.2(d).

 

ANNE GARDNER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:  June 29, 2006

 

 

 

 











[1]The
substantive portion of the letter states in whole,

 

Midland Loan Services, as servicer for
the Artesis Mortgage CMBS, Inc. 1998-C1 Securitization, has approved the
transfer of the strip shopping center located at 2800 Forestwood Drive,
Arlington, Texas from Enon, L.P. to a to be formed limited partnership to be
wholly owned by William L. Huntley and assumption of MLS loan #XX-XXXXXXX.





[2]The
trial court did not separately label its findings of fact and conclusions of
law.





[3]Having
determined that the evidence is legally insufficient to support the trial court=s
finding of fact number five, we need not address Huntley=s
argument that the evidence is factually insufficient to support the
finding.  See Tex. R. App. P. 47.1.





[4]Huntley
acknowledges that $100 of the earnest money is nonrefundable. 





[5]At
trial, when questioning Ryffel about the disposition of the earnest money and
the phrase Asubject
only to loan assumption,@
Huntley=s
counsel asked hypothetically what would happen to the earnest money if Midland
had not approved Huntley=s
assumption of the loan after seeing Huntley=s financials. Ryffel, again,
answered that Enon would retain the earnest money.





[6]Generally,
when an appellate court sustains a legal sufficiency issue, the remedy is to
reverse and render judgment.  Vista
Chevrolet, Inc. v. Lewis, 709 S.W.2d 176-77 (Tex. 1986).  However, because Huntley asserted his legal
sufficiency complaint only in his motion for new trial, we must remand the case
instead of rendering judgment.  See
Horrocks v. Tex. Dep=t of Trasp., 852
S.W.2d 498, 498-99 (Tex. 1993) (holding that an appellate court cannot reverse
and render on a legal sufficiency point raised only in a motion for new trial);
Hutchison v. Pharris, 158 S.W.3d 554, 562 n.8 (Tex. App.CFort
Worth 2005, no pet.).