**L. H. LAND PAINTING COMPANY, INC.,**
Appellant,

v.

**S & P CONSTRUCTION, INC., Appellee.**

No. 17551.

Court of Civil Appeals of Texas,
Fort Worth.

Nov. 1, 1974.

Rehearing Denied Dec. 6, 1974.

Paul B. Underkofler, Jr., Dallas, for appellant.

Weir, Gudgen & Brown, and Kenneth P. Gudgen, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

This is a suit for damages arising out of an alleged breach of guaranty that was contained in a building contract.

The plaintiff and appellee here, S & P Construction, Inc., contracted with Howell Instruments, Inc., to build a two-story building for the latter on some of its land in Fort Worth. S & P Construction, Inc., entered into a subcontract with the defendant and appellant here, L. H. Land Company, a corporation, by the terms of which the latter agreed to install complete a facade onto the north and west sides of the building to be made of wall panels of marble chips as was specified in the contract. The subcontractor in his contract guaranteed his work against all defects of materials and/or workmanship for a period of one year after the date of acceptance of his work by the owner.

Both before and after the subcontractor's work was accepted by the owner the subcontractor was called on a number of times by the contractor, S & P Construction, Inc., to repair a number of leaks and alleged defects in the facade. On one occasion, after a heavy rain, a number of the panels on the facade fell off to the ground.

The plaintiff contractor sued in this case to collect the damages that it allegedly sustained as a result of a claimed breach of warranty or guaranty committed by the subcontractor when the subcontractor allegedly failed and refused to correct the claimed defects that existed in the facade that it had constructed.

The subcontractor, defendant here, alleged as a defense to plaintiff's suit that while he was engaged in repairing and in replacing the defects in the facade an order was communicated to him by the contractor on January 26, 1971, to cease further replacement and repair of such defects, and that he was never thereafter instructed to continue the work and that the contractor then in March, 1971, told him to get his equipment off the premises and that this conduct by the contractor prevented and made it impossible for the subcontractor to further perform the guarantee.

The law is that if one party to a contract is prevented by the acts of the other party to the contract from performing such contract, then the party so prevented from performing is excused from further performance of the contract. His failure to perform under those circumstances cannot be made the basis of an action for damages for a breach of the contract. See Atomic Fuel Extraction Corporation v. Slick's Estate, 386 S.W.2d 180 (San Antonio Civ.App., 1964, writ ref. in 403 S.W.2d 784) and Cox v. KTM Drilling, Inc., 395 S.W.2d 851 (Amarillo Civ.App., 1965, ref., n. r. e.). And in Kirkwood & Morgan, Inc. v. Roach, 360 S.W.2d 173 (San Antonio Civ.App., 1962, ref., n. r. e.) the court held that if one party to a contract does not perform because of the express direction of the other party to such contract for him not to perform, then such failure to perform cannot thereafter be made the basis of an action for damages for the breach of such contract.

In submitting this particular defense to the jury the trial court submitted the following issue in its charge: "Issue No. 1: Do you find from a preponderance of the evidence that S & P Construction, Inc., prevented L. H. Land Painting Co. from promptly correcting the work on the Howell Instruments Building on the north and northwest facade which was rejected by the architect as defective? Answer, 'We do' or 'We do not'." The jury's answer to the issue was "We do."

In answer to the only other issue that was submitted the jury found that $19,000.00 was the reasonable and necessary cost for the replacement of the facade.

After receiving the verdict the trial court proceeded to render judgment notwithstanding the verdict in favor of the contractor, S & P Construction, Inc., awarding it a recovery from the subcontractor, L. H. Land Painting Company, Inc., of the sum of $18,051.73.

In the judgment the trial court recited that he disregarded the jury's finding in answer to Issue No. 1 because he was of the opinion that such answer was not supported by any sufficient evidence.

The subcontractor has here appealed from that decree.

The appellant's point of error No. 2 is that the trial court erred in granting appellee's motion for judgment non obstante veredicto and in denying appellant's motion for judgment.

We sustain that point of error and reverse the judgment.

In passing on this point the question for our decision is whether there is evidence of probative force in the record which supports the jury's answer to Special Issue No. 1.

The controlling law is stated in Harbin v. Seale, 461 S.W.2d 591 (Tex.Sup., 1970) as follows:

"The law is clear in this state that before a trial court can render a judgment non obstante veredicto, based on the absence of evidence, it must determine that there is no evidence having probative force upon which the jury could have made the findings relied upon. Whiteman v. Harris, 123 S.W.2d 699 (Tex.Civ.App.—Fort Worth 1938, writ ref'd). In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor."

The following cases make the same holding: Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958) and Alamo Ambulance Service, Inc. v. Moulton, 402 S.W.2d 200 (San Antonio Civ.App., 1966, affirmed in 414 S.W.2d 444).

A trial court cannot disregard a jury's answer to an issue merely because the evidence is factually insufficient to support the same. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup., 1965) and Nash v.

Roden, 415 S.W.2d 251 (Austin Civ.App., 1967, ref., n. r. e.).

Some of the evidence in the record relating to the question inquired about in Issue No. 1 is as follows: some of the panels on the facade fell off during the night of December 16, 1970, and the next day Perry Paschall, president of appellee, asked appellant to correct the matter; appellant then ordered materials so they could start reinstalling the panels; appellant had employees on the job on January 17, 1971, who had been instructed to start taking the panels off the facade from the top and to replace them; they were also then replacing panels that had not fallen off; additional employees were put on the job on January 19, 1971; appellant's employees on this occasion scaffolded the entire front of the building and began removing and replacing panels from the front of the building; appellant was doing the work in compliance with an earlier directive from the architect; on January 26, 1971, appellant was installing the backup board in an acceptable and approved manner; on that date appellant was replacing and not repairing the structure; the undisputed evidence was to the effect that the appellee stopped appellant from working and from further replacing the panels on January 26, 1971; and appellant did not hear further from appellee until February 18, 1971.

On February 18, 1971, appellee's attorney, Pat Weir, sent appellant's attorney the following letter:

"Per our telephone conversation this afternoon, enclosed please find Xerox copy of letter under date of February 18, 1971, addressed to S & P Construction, Inc. from Herman G. Cox, which was delivered to my office this afternoon and which I read to you in our telephone conversation.

"After I have talked with Perry, I will give you a ring."

The enclosed letter from the architect, Herman Cox, to S & P Construction, Inc., dated February 18, 1971, referred to in Pat Weir's letter, set out above, is as follows:

"On Tuesday, January 26, 1971 the Owner of above re project, requested that all work, in connection with the replacement of the damaged, Marble-chipped areas, be curtailed until and when a more thorough understanding between all parties concerned could be discussed and agreed on.

"This will be your authority to proceed with the removal and replacement of all Marble-chipped facing material on both vertical and horizontal surfaces (under the trade name of Finestone), including the back-up board to which it is now applied and to re-install the facing material as follows:

"a. Install 'Transitop' board as a back-up for all Marble-chipped surfaces where originally specified.

"b. Re in-stall 'Finestone Marble Aggregate Surfacing' in strict accordance with Manufacturers specifications, for application to the cement asbestos Transitop backing.

"c. Horizontal projection of facade at Second Floor roof line to have existing Finestone bed coat and roof cap removed. This area will then be re-decked with Transitop and then covered with a four (4) ply built-up Asphalt & Gravel roof. The leading edges will be provided with an Aluminum gravel guard and drip to protect the Marble-chipped surface below.

"d. Reinstall, metal letters bearing the company's name on the Vickery Street facade.

"In the prosecution of the above work it is imperative that the sub-contractors work be checked and supervised daily, as nothing other than a first-class finished product will be acceptable by the Owner. Your attention is also directed to the necessity of providing measures for protecting all adjacent surfaces, finishes, etc., while the work in question is being completed.

"Please advise this office of the date the above directed work will be started."

There was no evidence to show that Weir, after February 18, 1971, talked to Perry Paschall (the contractor's president) and then called appellant as was stated in Weir's letter that he would do.

So far as the record shows appellee did not after February 18, 1971, further contact appellant until March 26, 1971, and again on March 30, 1971, at which times by letters appellee ordered appellant to remove his truck and building materials from the job site. In one such letter was enclosed a letter dated March 17, 1971, from John McMackin, the owner's attorney, advising that the owner was taking immediate steps to make the necessary removal and replacement of the facade panels itself.

After appellee stopped appellant from working on the facade on January 26, 1971, appellee did not thereafter ever direct appellant to go back to work on the project. There is no evidence that appellant ever refused to either repair or replace the facade. Appellant was in the act of replacing panels of the facade when appellee ordered it to stop work.

It is impractical for us, because of its volume, to set out in this opinion all of the evidence that bears on the answer to Issue No. 1. The undisputed evidence shows, however, that on January 26, 1971, the contractor ordered appellee to stop replacing the panels on the facade. In compliance with the order appellant did stop work but left its truck and materials on the jobsite. On March 26, 1971, and again on March 30, 1971, appellee sent letters to the appellant directing it to remove its truck and building materials from the jobsite because the owner was going to finish the facade itself. In the interval between January 26, 1971, and March 26, 1971, the appellee only communicated with appellant one time and that was in its letter of February 18, 1971, from Pat Weir, appellee's attorney, directed to appellant's attorney telling him that he would thereafter talk with Perry

and then get in touch with him again. The evidence does not show that this was ever done. The record does not show that appellant was ever told, after being stopped from working, to resume work on the facade. His final word from appellee was to get all his belongings off the jobsite. The jury could reasonably infer from Mr. Weir's February 18, 1971, letter, even though the architect's letter of February 18, 1971, was therein enclosed, that appellant was to withhold work on the facade until after Mr. Weir had talked to Perry and re-contacted appellant as was stated would be done in Weir's letter. The letter from Weir indicates that the parties were at that time undecided as to the course of conduct to be followed by the parties, but that Weir would find out and later let appellant know.

We hold that the record in this case does contain evidence of probative force that supports the jury's answer to Special Issue No. 1. It follows that the trial court therefore erred in disregarding the jury's answer to such issue.

■ The appellee in its brief contends that Issue No. 1 was too broad, and that as worded it permitted the jury to consider evidence that it should not have considered in answering such issue. Even if appellee is correct in this contention, it cannot affect this appeal in any way for the reason that the record before us does not show that appellee made objection to such issue in the trial court. Nor are any crosspoints brought forward by appellee contending that the trial court erred in wording the issue as it was worded. The issue as worded is so broad that there is no question but what it did present for the jury's decision the affirmative defense pleaded and relied upon by the subcontractor.

Because of our action in sustaining appellant's point of error that is above discussed, we are required to reverse the trial court's judgment. On this appeal appellant has urged four points of error. In view of the fact that we are reversing the case for the reasons above stated, we hereby over-

rule appellant's three remaining points of error without discussion.

Since we have concluded that the trial court erred in rendering judgment notwithstanding the verdict in favor of appellee, and since appellee has not urged on this appeal any cross assignments of error showing that one or more prejudicial errors were committed against it over its objection during the trial of the case, it is our present duty to render the judgment that the trial court should have rendered in line with the jury's verdict. Rule 434, Texas Rules of Civil Procedure; Crow v. City of San Antonio, 157 Tex. 250, 301 S. W.2d 628 (1957); and Zachry v. McKown, 326 S.W.2d 227 (Austin Civ.App., 1959, ref., n. r. e.).

The trial court's judgment is therefore reversed and judgment is hereby rendered that S & P Construction, Inc. take nothing by its suit against the appellant. Costs are taxed against appellee.