**STATE OFFICE OF RISK MANAGEMENT,**
**Appellant,**

v.

**Marylee EDMONDSON, Appellee.**

**No. 05–08–01154–CV.**

Court of Appeals of Texas,
Dallas.

Jan. 21, 2010.

Rehearing Overruled March 18, 2010.

Rodney V. Ruiz, Assistant Attorney General, Elsa Giron Nava, Austin, TX, for Appellant.

Kay E. Goggin, Law offices of Kay E. Goggin, Dallas, TX, for Appellee.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellant State Office of Risk Management (SORM) appeals the trial court's judgment awarding appellee Marylee Edmondson attorney's fees under chapter 105 of the civil practice and remedies code. In two issues SORM contends the trial court (i) erred in assessing a sanction against SORM pursuant to chapter 105 and (ii) abused its discretion by failing to consider deposition testimony at the hearing of SORM's motion for new trial on the chapter 105 sanction. We affirm the trial court's judgment.

## Background

In 1990, while an employee of the Texas Workforce Commission, Edmondson sustained an on-the-job injury for which she has received ongoing treatment.[1] On September 6, 2005, SORM filed suit in district court contesting a workers' compensation award of July 29, 2005 ordering SORM to reimburse Edmondson for the cost of acupuncture, physical therapy and pain management treatments that were determined to be reasonable and necessary.[2] On May 17, 2006 and November 9, 2006, SORM amended its pleading to contest additional workers' compensation awards to Edmondson dated April 18, 2006 and October 13, 2006, respectively. On April 30, 2007, SORM filed suit in district court contesting a workers' compensation award to Edmondson dated March 23, 2007, that suit being consolidated with the suit filed September 6, 2005.[3] SORM contended the

---

1. Because Edmondson's injury occurred in 1990, this case is governed by the "old" workers' compensation act. *See* Act of May 26, 1981, 67th Leg., R.S., ch. 861, § 1, 1981 Tex. Gen. Laws 3290, 3290 (Tex.Rev.Civ Stat Ann art. 8306, § 10), *repealed by* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 1, 114; Act of Mar. 6, 1969, 61st Leg., R.S., ch. 18, § 4, 1969 Tex. Gen. Laws 48, 49 (Tex.Rev.Civ Stat. Ann. art. 8306, § 11), *repealed by* Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7), 1989 Tex. Gen. Laws 1, 114. The Legislature codified the current workers' compensation system in the Texas Labor Code. *See* Tex. Lab. Code Ann. § 401 et seq. (Vernon 2006 & Supp. 2009).

2. SORM is a statutory agency functioning as a workers' compensation insurance carrier. Tex. Lab.Code Ann. § 412.011 (Vernon Supp. 2009). "The state is self-insuring with respect to an employee's compensable injury." Tex. Lab Code Ann. § 412.0122 (Vernon 2006). *See* Tex. Lab Code Ann. § 401.011(27)(D) (Vernon Supp.2009) (Under Workers' Compensation Act, "insurance carrier" means "a governmental entity that self-insures, either individually or collectively.")

3. The July 29, 2005 workers' compensation award was ordered by the Workers' Compensation Commission. Effective September 1, 2005, the legislature dissolved the Workers' Compensation Commission, created the Divi-

acupuncture, physical therapy and pain management treatments underlying each of these workers' compensation awards were not reasonable and necessary.

On February 15, 2008, Edmondson filed her motion requesting the trial court sanction SORM pursuant to chapter 105 of the civil practice and remedies code on the ground that SORM's claim was frivolous, unreasonable or without foundation. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 105.002, .003 (Vernon 2005). Section 105.002 provides:

> A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a cause of action against the party, either originally or as a counterclaim or cross claim, is entitled to recover, in addition to all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by the party in defending the agency's action if:
>
> (1) the court finds that the action is frivolous, unreasonable, or without foundation; and
>
> (2) the action is dismissed or judgment is awarded to the party.

TEX. CIV. PRAC. & REM.CODE ANN. § 105.002. The case proceeded to trial, and the jury found in favor of Edmondson. The court held two hearings on Edmondson's chapter 105 motion following the jury trial.

On May 26, 2008, the trial court signed a final judgment based on the jury verdict and granted Edmondson's chapter 105 motion. SORM filed a motion for new trial. At the hearing of the motion for new trial, SORM sought only to have the chapter 105 sanction reversed. The trial court signed first amended findings of fact and conclu-

sions of law and denied SORM's motion for new trial. This appeal ensued.

## Chapter 105 Sanction

■ In its first issue, SORM contends the trial court erred in assessing the chapter 105 sanction because SORM relied upon an expert medical opinion, issued prior to filing of suit, indicating that acupuncture, physical therapy, and pain management treatments were no longer medically reasonable and necessary to treat Edmondson's work-related injury.

Whether a state agency's action is unreasonable within the meaning of section 105.002(1) is a mixed question of law and fact. *Brainard v. State,* 12 S.W.3d 6, 30 (Tex.1999), *disapproved of on other grounds by Martin v. Amerman,* 133 S.W.3d 262, 267–68 (Tex.2004). We therefore review the trial court's decision to award attorney's fees in this case for an abuse of discretion. *Brainard,* 12 S.W.3d at 30; *Attorney Gen. of the State of Tex. v. Johnson,* 791 S.W.2d 200, 202 (Tex.App.-Fort Worth 1990, no writ). In applying this standard, we defer to the trial court's factual determinations if they are supported by the evidence and review its legal determinations de novo. *Brainard,* 12 S.W.3d at 30.

■ Chapter 105 authorizes the award of attorney's fees when a state agency asserts a *claim* that is "frivolous, unreasonable, or without foundation," and not when the state agency otherwise *acts* frivolously, unreasonably, or without foundation. *See Brainard,* 12 S.W.3d at 30. A claim may be deemed unreasonable under chapter 105 when the totality of the tendered evidence fails to demonstrate any arguable basis for the claim. *Brainard,* 12

sion of Workers' Compensation, and merged the Division with the Texas Department of Insurance. *See* Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen.

Laws 469, 607–08. The April 18, 2006, October 13, 2006, and March 23, 2007 awards were ordered by the Division.

S.W.3d at 30; *Johnson,* 791 S.W.2d at 202 (claim subject to chapter 105 sanction when totality of evidence failed to demonstrate arguable basis for suit).

Following the hearings on the motion under chapter 105, the trial court made findings of fact that included the following:

6. The Office of Texas Attorney General and SORM contended they had a good faith basis to dispute that Edmondson's treatment was reasonable and necessary on three grounds: (i) a peer review report of Dr. Garcia indicated that the disputed treatments were not necessary; (ii) Edmondson failed to attend an Independent Medical Exam (IME) with a doctor of SORM's choice; and (iii) a peer review report of Dr. Gregory Goldsmith indicated that the disputed treatments were not necessary.

8. Terry Myers, Director of Claims Operations for SORM, told Edmondson in a telephone conversation that if Edmondson were to be examined by Dr. Carlos Esparza, SORM would adopt the findings and conclusions of Dr. Esparza concerning the disputed treatments notwithstanding a report from Dr. Garcia.

9. SORM, not Edmondson, chose Dr. Esparza to conduct an IME.

10. An appointment was scheduled for Edmondson to see Dr. Esparza. Dr. Esparza indicated to SORM that he required prepayment to see Edmondson. SORM was insistent in informing Dr. Esparza that it was the policy of SORM not to prepay doctors for their services.

11. The appointments to see Dr. Esparza were rescheduled because of SORM's policy not to prepay Dr. Esparza. SORM did not prepay Dr. Esparza for his IME of Edmondson.

12. Edmondson did see Dr. Esparza for the IME requested by SORM. Dr. Esparza's exam of Edmondson was an IME.

13. Dr. Esparza concluded that the disputed treatments were reasonable, necessary, and related to Edmondson's compensable injury.

14. Notwithstanding SORM's promise to abide by the findings and conclusions of Dr. Esparza, SORM failed to abide by such findings and failed to pay for the disputed treatment.

15. SORM attempted to deny that Dr. Esparza's exam was an IME because Dr. Esparza did not write a report that was in response to certain specific questions posed to him by SORM. However, Terry Myers acknowledged on cross-examination that the applicable law does not require an IME report to be in response to certain specific questions posed to the doctor by the carrier.

16. After Dr. Esparza's IME of Edmondson, SORM tried to obtain Edmondson's agreement to submit to an IME with another doctor. However, Tisha Toddman, SORM's adjuster on Edmondson's claim, acknowledged on cross-examination that the applicable law requires that the IME be with the same doctor unless there is an agreement of the parties, or the Texas Workers' Compensation Commission or the Workers' Compensation Division of the Texas Department of Insurance orders the IME to be with a different doctor. In this case, Edmondson did not agree to see another IME doctor and neither the Texas Workers' Compensation Commission (Commission) or Workers' Compensation Division of the Texas Department of Insurance (Division) ordered an IME to take place with another doctor.

17. In light of the foregoing, SORM's position that it acted in good faith in bringing this action because (i) a peer review report of Dr. Garcia indicated that the disputed treatments were not necessary and (ii) Edmondson failed to

attend an IME with a doctor of SORM's choice were not credible. This is because the foregoing shows that: (i) SORM had indicated that it would not rely on a peer review of Dr. Garcia, who never examined Edmondson, once a doctor of its choosing made findings and conclusions after examining Edmondson; and (ii) Edmondson did attend an IME with Dr. Esparza, a doctor of SORM's choice. SORM's attempt to get Edmondson to have an IME with yet another doctor without Edmondson's agreement or order of the Commission or Division was illegal.

18. Despite SORM's insistent policy that it never prepays doctors for services, SORM prepaid Dr. Goldsmith for his peer review report. On cross-examination, SORM's witnesses acknowledged that SORM prepaid Dr. Goldsmith for his deposition in this case. Once the payment for testifying for an hour was exhausted, Dr. Goldsmith was paid on the spot before agreeing to testify further at his deposition.

19. SORM did not provide Dr. Goldsmith with all the relevant documentation concerning Edmondson's treatment, and, therefore, he did not have all the relevant information to complete a reliable peer review.

20. In light of the foregoing, SORM's position that it acted in good faith in bringing this action because a peer review report of Dr. Goldsmith indicated that the disputed treatments were not necessary was not credible. The foregoing shows that Dr. Goldsmith's report was pre-textual because: (i) SORM did not provide Dr. Goldsmith with all the relevant documentation; and (ii) by breaking its steadfast policy on not prepaying doctors, SORM was in effect, "purchasing" a favorable report.

24. Based on the foregoing, the instant action brought by the Office of Texas Attorney General on behalf of SORM was frivolous, unreasonable, and without foundation.

The trial court made a conclusion of law that Edmondson was entitled to receive reasonable and necessary attorney's fees and other fees and expenses recoverable under civil practice and remedies code section 105.002.

Our analysis of SORM's first issue begins with the observation that SORM has failed to adequately challenge the trial court's findings of fact and conclusions of law. In the "Statement of the Case" portion of its brief, SORM asserts the trial court "abused its discretion when it made findings of fact that are not supported by the evidence, and or are not relevant to the Chapter 105 sanctions." SORM states these "included" findings of fact 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 24, and the trial court's conclusion of law that Edmondson was entitled to sanctions under section 105.002. However, SORM failed to brief its assertion regarding the adequacy of the trial court's findings of fact. Specifically, SORM did not provide argument demonstrating that the trial court's findings of fact were without evidentiary support in the record or were not relevant to the chapter 105 sanction. An appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(i).

Setting this procedural shortcoming aside, we believe the totality of the record contains credible evidence to support the trial court's findings and the legal conclusion drawn from the facts. See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002). SORM argues it was entitled to rely on the October

2003 report of Dr. Goldsmith to justify its challenge to the relevant workers' compensation awards and the trial court erred in concluding SORM's claim was frivolous, unreasonable, or without foundation warranting the chapter 105 sanction. The evidence establishes that an IME of Edmondson was performed by Dr. Esparza on May 13, 1999. It is undisputed that SORM communicated to Edmondson that if she would permit Dr. Esparza to perform a subsequent IME regarding the disputed medical treatments, SORM would abide by Dr. Esparza's determinations. A second IME of Edmondson was performed by Dr. Esparza on January 29, 2003, and Dr. Esparza opined that the disputed treatments were reasonable, necessary, and related to Edmondson's compensable injury. Despite Dr. Esparza's opinion and SORM's representation to Edmondson that Dr. Esparza's opinion would be determinative, in October 2003, SORM sought and obtained a medical "peer review" from Dr. Goldsmith regarding the reasonableness and necessity of Edmondson's disputed treatments. Dr. Goldsmith's medical "peer review" involved a review of certain medical records provided by SORM; Dr. Goldsmith did not examine Edmondson. Based upon this records review, Dr. Goldsmith opined that Edmondson's acupuncture, physical therapy and pain management treatments were no longer reasonable and necessary to treat her work-related injury. Thereafter, SORM filed the underlying suit in district court challenging the workers' compensation awards.

There is evidence in the record supporting the trial court's findings of fact, including the finding that SORM's position that it acted in good faith in bringing this action was not credible. Based on the totality of the evidence in the record, we conclude the trial court did not abuse its discretion in concluding as a matter of law

that SORM's claim was frivolous, unreasonable, or without foundation warranting the chapter 105 sanction. We overrule SORM's first issue.

### Dr. Esparza's Deposition

At the July 28, 2008 hearing of SORM's motion for new trial concerning the chapter 105 sanction, the trial court denied admission of the July 23, 2008 transcript of Dr. Esparza's deposition testimony. In its second issue, SORM contends the trial court abused its discretion in denying admission of that evidence.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001); *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411 (Tex.App.-Dallas 2006, pet. denied). Under an abuse of discretion standard, we are not free to substitute our judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court abuses its discretion only if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Columbia Med. Ctr.*, 198 S.W.3d at 411.

For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error and (2) the exclusion of evidence probably resulted in the rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992). Dr. Esparza conducted his second IME of Edmondson in January 2003. Dr. Esparza's testimony was evidence SORM could have obtained and introduced at the trial on the merits in advance of the chapter 105 hearings. *See In re S.M.V.*, 287 S.W.3d 435, 451 (Tex.App.-Dallas 2009, no pet.) (to obtain new trial based on newly

discovered evidence, appellant must show evidence had come to appellant's knowledge since trial and appellant could not have discovered the evidence prior to trial with exercise of due diligence). Moreover, SORM's brief has neither asserted nor shown that exclusion of Dr. Esparza's testimony resulted in rendition of an improper judgment.

Based upon the record before us, we are unable to conclude the trial court abused its discretion in denying admission of the July 23, 2008 deposition testimony of Dr. Esparza. But even if the trial court should have admitted the proffered evidence, we cannot conclude the error was reversible. After reviewing the record, we cannot conclude the exclusion of the evidence probably caused rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a)(1). Therefore, we overrule SORM's second issue.

### Conclusion

We affirm the trial court's judgment.