COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 TRAVIS HAZLEWOOD,
  
                            
 Appellants,
  
 v.
  
 WILLIAM LAFAVERS,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
  § 
  
 
 
  
 No. 08-11-00012-CV
  
 Appeal from the
  
 17th
 District Court 
  
 of Tarrant
 County, Texas 
  
 (TC# 017-224927-07)
 
  
 
 


 

O
P I N I O N

            Travis Hazlewood (“Hazlewood”
or “Appellant”) appeals the judgment of the trial court following a
bench trial in which the trial court entered a take-nothing judgment against Hazlewood and
awarded damages and attorney’s fees to William Lafavers
(“Lafavers” or “Appellee”) against Hazlewood
and third-party defendant, Sealy Four Company d/b/a Sweetwater Well Service
(“Sealy”).[1]  Hazlewood
brings five issues:  (1) error in the
trial court’s entering of judgment for Lafavers
because Lafavers’ exclusion of Hazlewood from the well site
prevented Hazlewood from either
completing or plugging the well; (2) the great weight and preponderance of the
evidence required the trial court to find that any damages suffered by Lafavers were caused by Lafavers’
exclusion of Hazlewood
from the well site; (3) legal and factual insufficiency of the evidence that Hazlewood caused injury to Lafavers; (4) the trial court’s findings that Hazlewood suffered no damages as a
result of Lafavers’ conduct and that Hazlewood is not entitled to recover damages
from Lafavers is against the great weight and
preponderance of the evidence; and (5) error in awarding attorney’s fees to Lafavers.  Hazlewood also challenges thirty-three
(33) of the trial court’s findings of fact.[2]
 For the reasons that follow, we affirm.

PROCEDURAL
BACKGROUND

            Hazlewood filed suit against Lafavers in the District Court of Tarrant County, alleging
breach of contract, defamation, and conversion and/or wrongful retention of
property.  Lafavers
filed affirmative defenses and counter-claims against Hazlewood and Sealy, alleging breach of contract, negligence,
promissory estoppel, and violations of the Texas Deceptive Trade Practices Act
(“DTPA”).[3]  Hazlewood and Sealy answered, asserting affirmative
defenses arguing that any obligation owed to Lafavers
was excused as a result of Lafavers’ conduct and that
Lafavers’ own actions caused his injury and damages.  Sealy filed a separate counterclaim against Lafavers alleging Lafavers
materially breached the contract and caused Sealy damages and made slanderous
remarks about Sealy’s business.  Before
trial, Lafavers obtained a partial motion for summary
judgment (“MFSJ”) regarding Hazlewood’s conversion and defamation claims.  The MFSJ was denied as to Hazlewood’s breach of contract
claim and other matters.[4]  Following a bench trial from September 8,
2010 through September 14, 2010, the trial court entered a take-nothing
judgment as to Hazlewood
and Sealy’s claims against Lafavers, and awarded actual
damages to Lafavers in the amount of $30,980.00
against Hazlewood
and Sealy, finding that Hazlewood
had knowingly and intentionally violated the DTPA.  The trial court also awarded prejudgment
interest and attorney’s fees in the amount of $105,000.00.  The court issued findings of fact and
conclusions of law on November 5, 2010.  Hazlewood timely appealed.

FACTUAL
BACKGROUND

            Sealy
initially began as a company drilling oil and gas wells, later drilling water
wells in the area north of Fort Worth.  Sealy
operated under the assumed name of Sweetwater Well Service (“Sweetwater”).  Hazlewood, not Sealy, was the party who held the water well
drillers license.  Hazlewood acted as general
manager and general partner of Sealy and individually performed and supervised
all of the work on the well at issue (“the Well”).  The structure and organization of Hazlewood’s
business was not revealed to Lafavers until after the
lawsuit commenced.

Lafavers wanted a well that would provide water for
irrigation, his home, and three additional homes.  Hazlewood discussed Lafavers’
requirements with him in early 2007 and according to Lafavers, Hazlewood
advised that he had drilled hundreds of wells. Hazlewood
stated that while he could not guarantee water, the likelihood of not having
water was almost zero.[5]
Hazlewood
advised that he would drill into the Paluxy Aquifer
(“Paluxy”) at a depth of approximately 800 feet and
that the Paluxy water should take care of Lafavers’ needs.  Hazlewood prepared a graph showing Lafavers where the water and different geographic
formations were located.  He also explained:
 the actions necessary to obtain water
suitable for residential use; where the Paluxy Aquifer
was; how much water could be produced from the Well; and that the Well would be
sealed with concrete to a depth of at least 250 feet in order to seal the Well
from the Woodbine Aquifer (“Woodbine”).  This
was to prevent commingling of the aquifers. 
Woodbine is only useable for irrigation, due to the high presence of
iron and other minerals and chemicals.

Hazlewood, Sweetwater, and Sealy
entered into a written contract (“the Contract”) with Lafavers
in April of 2007 agreeing that Sweetwater would drill a water
well on Lafavers’ property in Southlake, Texas.  The Contract provided that Hazlewood would drill and complete the
well pursuant to the laws and regulations of the State of Texas, as prescribed
by the Texas Department of Licensing and Regulation (“TDLR”).  Under the terms of the Contract, Hazlewood, Sweetwater, and Sealy were
required to complete the Well by installing casing, screening, and gravelling
the aquifers, cementing the casing, sealing the well, developing the water
flow, installing the electric submersible pump, producing tubing, wellhead, and
surface controls, and installing the tank.

Hazlewood, Sealy, and Sweetwater
represented to Lafavers, in the presence of
witnesses, that a ten horsepower (“hp”) motor,
requiring the installation of three-phase electricity, would be necessary to ensure
sufficient pressure for all of the locations. 
The written contract does not state what horsepower pump Hazlewood would install, however Hazlewood testified that the “standard
contract” he used provides for a five horsepower pump.

Work began on
April 28, 2007, and the drilling process was concluded on Friday, May 4, 2007.  Hazlewood
stated that he capped the well casing with a pipe extending approximately
eighteen inches above ground before leaving the site that day.  However, he admitted that the first time he
told anyone he had done so was at the trial itself.  Testimony from a TDLR investigator challenged Hazlewood’s
statement, indicating that there was not a proper cap on the well.  Heavy rains occurred that weekend, and when Hazlewood
returned to the well site on Monday, May 7, 2007, he discovered that the well
bore had been breached, collapsed, and obstructed at a depth of approximately
twenty feet below the surface.  Hazlewood testified that he decided to
seal the upper part of the well and continue the work later.  Hazlewood
attached an extension to the top of the pipe, then purchased concrete and began
to pour the dry concrete directly into the well bore onto the standing water
above the obstruction.[6]  Hazlewood
testified that he continued to add dry concrete mix into the hole until there
was dry concrete mix visible two feet below the surface, in order to create a concrete slurry in the pipe.  Hazlewood testified that state rules do not prevent mixing
water and concrete in the ground to produce a slurry
to seal the top of a well.  Hazlewood testified:
 “It’s much like putting in fence posts
out at the farm.  You pound it out until
it gets right, then you pour some more cement mix in, put a little bit of water
in it and keep working it around until it’s right and work my way up.”  Hazlewood
testified that after he had sealed the surface, he advised Lafavers
that he would return in a day or two to complete the Well, after it had dried
out, at which point Hazlewood
alleged that Lafavers began “[flying] off the
handle,” and refused to allow Hazlewood
to return to his property.

Lafavers testified that he observed Hazlewood pouring dry concrete mix into the Well Monday
morning.  Lafavers
later spoke to Brad White, an employee of Hazlewood, and asked whether that was the “right way” to handle
the Well.  White advised Lafavers that there were likely other issues he should be
made aware of and that White would have Richard Evans, Hazlewood’s driller, call
him.  Following that call, Lafavers confronted Hazlewood about the concrete,
and Hazlewood
stated “that’s a perfectly legitimate way to do it.”  At some point after the dry cement was poured
into the Well, Hazlewood
fired White and Evans.

Hazlewood testified that he subsequently
called Lafavers several times.  Lafavers testified
that he next spoke to Hazlewood
approximately two weeks after May 8, 2007 and asked him to remove a trailer
from Lafavers’ property.  Later, Hazlewood approached Lafavers with a revised contract stating that Hazlewood
would either walk away from the job, pay Lafavers
$980 and walk away, or Hazlewood
would install the 10 horsepower pump if Lafavers
would pay extra for it.  Lafavers refused.  Hazlewood
later contacted Lafavers about removing a backhoe
from Lafavers’ property.

Lafavers filed a complaint with the TDLR regarding the well
on June 25, 2007.[7]
 The TDLR investigated and determined
that the Well was never properly completed, and after gathering water samples,
discovered that the breach and the failure to properly seal the breach in
accordance with Texas law caused the Woodbine Aquifer to contaminate the Paluxy Aquifer, rendering the water in the Well unusable for residential purposes.

At trial, a
retired TDLR investigator who investigated the pump and obstruction at the Well
testified that:  (1) pouring dry cement
into the annular space of the Well and mixing it in the hole with standing
water does not meet TDLR standards of a slurry; (2) a slurry requires a ratio
of one part cement to seven parts water; (3) the proportionate ratio for a
slurry cannot be determined by pouring dry cement into the annular space of a
well and trying to mix it at a depth 18-20 feet; (4) it would be difficult, if
not impossible to mix cement and water at a depth of 18-20 feet using a PVC
pipe as Hazlewood
claimed he did; and (5) when mixing cement and water it should be mixed in a
container in the proper ratio then pumped or poured into the well.

The TDLR eventually
found that Hazlewood committed
violations of various state statutes or rules, specifically:  (1) failure to place a cover or cap over the
boring or casing, in violation of 16 Tex.Admin.Code § 76.702(d); (2) failure to include
requisite TDLR information on an invoice to perform water well drilling
services, a violation of 16 Tex.Admin.Code § 76.706(d); (3) failure to properly
cement the annular space of a water well, violating 16 Tex.Admin.Code § 76.1000(a)(1)
and (2); and (4) failure to drill a well in a manner which prevented
commingling of separate aquifers of different chemical content, violating 16 Tex.Admin.Code
§ 76.1000(d).[8]

In the findings of
fact and conclusions of law issued after the bench trial, the trial court
specifically found that:  (1) Hazlewood never returned to the
property to try and do anything further with the Well or to install the pump
and tank; (2) because of the obstruction and length of time the Well remained
uncompleted it is no longer repairable; (3) Hazlewood never stated in
discovery that Sealy and/or its shareholders was a potential party and failed
to do so until Hazlewood filed
his Second Amended Petition, which was filed after the expiration of the discovery
period and the deadline to disclose experts; (4) Hazlewood did not intend to seal the Well with cement from the
surface to a depth 20 feet below when Hazlewood
had represented to Lafavers that the Well would be
sealed with cement to a depth of 250 feet in order to prevent commingling; (5) Hazlewood, Sweetwater, and Sealy
allowed the Paluxy and Woodbine Aquifers to
commingle; (6) Hazlewood and
Sweetwater failed to timely complete the Well, failed to seal the Well pursuant
to state law and TDLR statutes, and allowed an obstruction in the well bore
rendering the Well unusable; (7) Hazlewood,
Sealy, and Sweetwater never intended to seal the annular space of the Well, in
particular, in order to seal off the Woodbine Aquifer; (8) the Well was not
drilled in a good, workmanlike manner; (9) Hazlewood, Sealy, and Sweetwater’s conduct was in violation of the
DTPA and was both knowing and intentional; and (10) the conduct of Hazlewood,
Sweetwater, and Sealy was negligent.

DISCUSSION

Hazlewood raises five issues on
appeal:  error in the trial court’s
entering of judgment for Lafavers because Lafavers’ exclusion of Hazlewood from the well site
prevented Hazlewood from either
completing or plugging the well; the great weight and preponderance of the
evidence required the trial court to find that any damages suffered by Lafavers were caused by Lafavers’
exclusion of Hazlewood
from the well site; legal and factual insufficiency of the evidence that Hazlewood’s
violations of Texas law caused injury to Lafavers;
the trial court findings that Hazlewood
suffered no damages as a result of Lafavers’ conduct
and that Hazlewood is not
entitled to recover from Lafavers is against the
great weight and preponderance of the evidence; and error in the award of
attorney’s fees to Lafavers.  Hazlewood
also challenges thirty-three findings of fact.

Moreover, Hazlewood’s brief raises the
following issues:  (1) testimony
regarding requirements of a completed well is not relevant to the issues before
the Court; (2) Lafavers’ conduct excused Hazlewood
from completing the well; (3) Lafavers did not allow Hazlewood to complete or repair the
well; (4) Lafavers’ silence on the issue and the
documents he produced support Hazlewood’s testimony that he was not allowed to return to
the well site; and (5) Lafavers refused to allow Hazlewood to return, two months after
the TDLR completed its investigation of the Well site.  Of these issues, Hazlewood only cites to any
authority on point two.  The remaining
points are generally argument and cites to the record, however Hazlewood does argue that “[t]he great
weight and preponderance of the evidence” proves that Lafavers
refused to allow Hazlewood to
reenter the site (point five of Hazlewood’s argument). 
Hazlewood
further argues that “[t]he findings of fact to the
contrary are manifestly unjust, and the Court should conclude those findings
are against the great weight and preponderance of the evidence . . . .”

Unchallenged Findings of Fact

When findings of
fact are filed and unchallenged they occupy the same position and are entitled
to the same weight as the verdict of a jury.  McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986).  Unchallenged
findings of fact are binding unless the contrary is established as a matter of
law or there is no evidence to support the finding.  MCI
Telecommunications Corp. v. Texas Utilities Elec. Co., 993 S.W.2d 663, 672
(Tex.App.--Fort Worth 1996), aff’d in part and rev’d in part, 995 S.W.2d
647 (Tex. 1999)(reversing take-nothing decision on attorney’s fees and
affirming remainder of opinion), citing
McGalliard,
722 S.W.2d at 696; Raman Chandler
Properties, L.C. v. Caldwell’s Creek Homeowners Ass’n,
Inc., 178 S.W.3d 384, 397 (Tex.App.--Fort Worth
2005, pet. denied); Samuelson v. United
Healthcare of Tex., Inc., 79 S.W.3d 706, 708 (Tex.App.--Fort
Worth 2002, no pet.).  Any unchallenged
finding of fact that supports the judgment will preclude a reversal of the
case.  U.S. Pipeline Corp. v. Kinder, 609
S.W.2d 837, 841 (Tex.Civ.App.--Fort Worth 1980, writ ref’d n.r.e.); MCI Telecommunications, 993 S.W.2d at
672 (noting same).

            Hazlewood did not challenge thirty-nine
findings of fact.  Some of the unchallenged
findings include:  Hazlewood, after pouring the dry concrete mix
into the well, fired his employees “and never returned to try and do anything
further with the well, or install the pump and tank” (Finding 28); Hazlewood, Sweetwater, and Sealy
violated 16 Tex.Admin.Code
§ 76.706(d) in failing to indicate required information on their invoice
(Finding 30); Hazlewood,
Sweetwater, and Sealy made representations that they would seal the annular
space of water wells with concrete or bentonite by pumping the concrete or
bentonite from the bottom of the well hole to the surface, but failed to do so
for the Well and in fact, removed the pump and bentonite from the Well site and
instead poured bags of dry concrete mix into the annular space (Findings 20,
21, and 27); water samples taken from the Well showed presence of Woodbine
water sands (Finding 36); water from the Well is unsuitable for domestic or
residential use (Finding 38); the Well is not repairable due to the obstruction
and length of time it has remained uncompleted (Finding 39); and Hazlewood,
Sweetwater, and Sealy suffered no damages, either based on any comments made by
Lafavers or during the time a backhoe was left on Lafavers’ property (Findings 46, 47, and 48).  Findings 15 and 52 establish the actual damage
determination of the trial court.

Standards of Review

When reviewing
challenges to the factual sufficiency of the evidence, we consider all the
evidence and set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence that it is clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  The finder of fact is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986). 
The fact finder may choose to believe one witness and disbelieve others.  McGalliard, 722 S.W.2d at 697.  If sufficient competent evidence of probative
force exists to support the finding, it must be sustained.  In re B.R., 950 S.W.2d 113, 121 (Tex.App.--El
Paso 1997, no pet.).  Where
conflicting evidence is present, the fact finder’s determination on such
matters is generally regarded as conclusive.  Cass v.
Stephens, 156 S.W.3d 38, 56 (Tex.App.--El Paso 2004),
judgment vacated on other grounds,
538 U.S. 1054, 123 S.Ct. 2213, 155 L.Ed.2d 1103 (2003)(memo.).

Because this was a
trial to the bench, the trial court was the exclusive judge of the credibility
of the witnesses and the weight to be given to their testimony.  MCI
Telecommunications, Corp., 993 S.W.2d at 672, citing Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d 742,
744-45 (Tex. 1986).  As the trier of
fact, the trial court has several alternatives available when presented with
conflicting evidence: it could believe one witness and disbelieve others; it
could resolve inconsistencies in testimony; or it could accept lay testimony
over that of an expert.  MCI Telecommunications, Corp.,
993 S.W.2d at 672-73, citing Harvey
v. Stanley, 803 S.W.2d 721, 724 (Tex.App.--Fort
Worth 1990, writ denied). 
Resolution of the fact questions fall squarely in the province of the
fact finder, and we will not retry the case on appeal.  MCI
Telecommunications, Corp., 993 S.W.2d at 673.

I.                  
Exclusion
from the Well site

Hazlewood
first asserts error in the trial court’s entering of judgment for Lafavers because Lafavers excluded
Hazlewood from the well site, thereby
preventing Hazlewood
from either completing or plugging the well. 
His second point of error is that that the great weight and
preponderance of the evidence required the trial court to find that any damages
suffered by Lafavers were caused by Lafavers’ exclusion of Hazlewood from the well site.  Hazlewood’s fourth point of error is that the trial court’s
findings that Hazlewood suffered
no damages as a result of Lafavers’ conduct and that Hazlewood is not entitled to recover damages from Lafavers are against the great weight and preponderance of
the evidence.  Hazlewood vigorously argues
that Lafavers’ conduct resulted in Hazlewood not being able to return to
the Well site and either complete or repair the Well,
thus establishing an affirmative defense of excused performance. [9]  We disagree.

Hazlewood cites three cases in support
of his excused performance argument.  In L. H. Land Painting Co., Inc. v. S & P
Const., Inc., 516 S.W.2d 14 (Tex.Civ.App.--Fort
Worth 1974, pet. dism’d), a plaintiff contractor sued
a subcontractor for a breach of warranty committed when the subcontractor
failed and refused to correct defects in a façade it built.  The subcontractor raised the defense that he
was engaged in repairing and replacing the defects in the façade when he
received word to cease work and was never thereafter instructed to continue
work.  The jury found that the
subcontractor was excused from performance of the contract,
however the trial court disregarded this finding and entered a judgment
notwithstanding the verdict in favor of the contractor, noting the evidence was
insufficient.  L.H. Land Painting Co., Inc., 516 S.W.2d
at 15-16.  That ruling was
reversed on appeal.  The court of appeals
noted that the subcontractor: performed at the direction of the contractor; had
ordered materials so the façade panels could be reinstalled; was replacing
panels which fell off and panels which had not; brought additional employees to
work on the repairs; was performing work in compliance with an earlier
directive from the architect on the project and was installing the boards in an
acceptable and approved manner; and the subcontractor was stopped from
performing the work after having performed the repairs for a week.  Id. at 17.

Here, one of the unchallenged
findings of fact issued by the trial court clearly found that Hazlewood, after
dumping the dry concrete mix into the well, fired his employees then left the
Well site and never returned.[10]
 The record indicates that Hazlewood was
performing the work in a manner which was not approved under applicable Texas
law.  The record further shows that when Hazlewood left for the weekend after completing drilling
but before completing the Well, he “capped” the Well in a manner which,
according to a TDLR investigator’s testimony, was not approved under Texas law.  Unlike the subcontractor in L.H. Land, the record reflects that Hazlewood
had not been performing his work in an approved and acceptable manner, and had
breached the terms of the Contract with Lafavers by
performing work in contravention of applicable state law.  Further, instead of bringing in additional
employees and working in compliance with earlier directives, as was done in L.H. Land, Hazlewood’s
repair work was also in contravention of state law.

Hazlewood next cites Rich
v. McMullan, 506 S.W.2d 745, 747 (Tex.Civ.App.--San
Antonio 1974, writ ref’d n.r.e.).  The Rich
case involved a suit to compel vendors to specifically perform on an earnest
money contract for the sale of a homestead ordered by the court following a
summary judgment hearing.  Rich’s reference to excusal of
performance was related to an argument raised by the vendors that they signed
the contract with the understanding that the contract would be modified and, as
the modification did not occur, the vendors were excused from performance.  Id. at 748.  Those
facts are inapposite to the case before us. 
The Rich court notes a
principle of contract law which, in light of the facts here, more likely supports
Lafavers’ position: 
“It is elementary that one who prevents or makes impossible the
performance of a condition precedent upon which his liability under a contract
is made to depend cannot avail himself of its nonperformance.”  Id. at 747, citing 17 Amer.Jur.2d, Contracts, Section 427, p.
882.  Hazlewood
made it impossible to perform a condition precedent when Hazlewood fired his
employees and left the Well site, never to return, thus preventing the
completion of the Well pursuant to the terms of the Contract.  Hazlewood cannot then
rely on the nonperformance to his benefit.

Finally, Hazlewood also cites Dorsett
v. Cross, 106 S.W.3d 213 (Tex.App.--Houston [1st
Dist.] 2003, pet. denied) in support of his argument that Lafavers’
conduct excused Hazlewood from completing the
Well.  Again, this case supports Lafavers’ position, as the court of appeals affirmed a
jury’s verdict finding that a purchaser of stock’s failure to satisfy a
condition precedent did not excuse his failure to perform a stock sale
agreement.  The court in Dorsett noted that a breach of contract
occurs when a party fails or refuses to do something he had promised to
do.  Dorsett,
106 S.W.3d at 217. 
This case is also distinguishable on its facts, as it concerned a stock
purchase transaction with an associated promissory note containing specific
conditions precedent.  Id. at 217-18.  Here, Hazlewood prepared a contract where he
promised Lafavers he would construct a well and do so
in accordance with applicable Texas law.  A review of the record supports the trial
court’s determination that the initial breach of the contract was caused by Hazlewood.

            Hazlewood
argues that testimony regarding the requirements of a completed well is not
relevant to the issues before this Court. 
He asserts “[t]his is not a case about failing to properly complete a
well” and it is unnecessary to address the substantial testimony provided by
the TDLR and other witnesses regarding Hazlewood’s
construction of the Well.  Hazlewood provides this Court with no authority to support his
argument.

The primary purpose
of the Contract, which Hazlewood alleges was breached through Lafavers’ actions, is that Hazlewood would construct the
Well in accordance with applicable state law, as promulgated by the TDLR.  Lafavers’ counter-claim
asserted a breach of the Contract by Hazlewood. 
The testimony of the TDLR was heard and accepted by the trial court and
the evidence was relevant to rebut Hazelwood’s contentions.  The unchallenged finding that the TDLR
investigated and determined that a breach of the well casing caused the
Woodbine Aquifer to commingle with the Paluxy Aquifer
is supported by the evidence.  The TDLR
rules require:

All wells, especially those that are
gravel packed, shall be completed so that aquifers or zones containing waters
that differ in chemical quality are not allowed to commingle through the
borehole-casing annulus or the gravel pack and cause quality degradation of any
aquifer or zone.

 

16 Tex.Admin.Code
§ 76.1000(d)(2012)(Tex. Dep’t of Licensing and
Regulation, Locations and Standards of Completion for Wells).

 

            The
record is clear that Hazlewood violated provisions of Texas law by allowing the
aquifers to commingle, thus breaching the Contract on that point alone.  The testimony of the TDLR was relevant to
this determination and is supported by competent evidence.

            At
trial Hazlewood testified that he last left Lafavers’
property on May 7, 2007.  Hazlewood
further testified that he had attempted to call Lafavers
several times by mid-May, but was told not to attempt to repair the Well or
return to the property.  Following the
commencement of the TDLR investigation, there is evidence of correspondence
between the parties, including the TDLR advising Lafavers
to allow Hazlewood on the property, and Lafavers setting out terms and conditions under which he
would allow Hazlewood to return to the Well site.  Hazlewood ultimately chose not to accept Lafavers’ terms and conditions.  Lafavers testified
that; he never had any communication with Hazlewood
where Lafavers barred Hazlewood
from the property; Lafavers asked Hazlewood
when he would return and finish the Well; and Hazlewood
left and did not return after Lafavers’ refused to
amend the Contract.  Hazlewood’s
former employee Brad White testified via deposition that Hazlewood had the
opportunity to complete the Well but simply chose not to do so.  The expert witness from the TDLR’s Water Well
Drillers Program testified that any delay by Lafavers
in allowing the TDLR to investigate the Well was reasonable; that Lafavers allowed Hazlewood access
to the property to do any corrective work; that the State was prepared to return
to determine whether Hazlewood’s violations had been
corrected; and that Hazlewood demanded a hearing
before the TDLR (resulting in the later SOAH proceeding), instead of returning
to correct his work.

Our review of all of the evidence, leads us
to conclude that the trial court’s determination relative to Hazlewood’s assertion of excused performance was not so
contrary to the overwhelming weight of the evidence that it was clearly wrong
and unjust.  Cain, 709 S.W.2d at 176.  The great weight and preponderance of the
evidence supports the trial court’s judgment. 
Hazlewood’s first, second and fourth issues
are overruled.

II.               
Error
relating to Appellant’s state law violation

Hazlewood’s third issue asserts that the evidence is
legally and factually insufficient to support the trial court’s finding that Hazlewood’s violations of Texas law caused injury to Lafavers.

Hazlewood has
wholly failed to direct us to any authority regarding his legal sufficiency
challenge.  Furthermore, Hazlewood has
not asked for relief consistent with a legal sufficiency challenge.  Because Hazlewood failed to adequately brief
his legal sufficiency issue, we will limit our review to his factual
sufficiency claims.  Vantil v. State, 884 S.W.2d
212, 213, n.1 (Tex.App.--Fort Worth 1994, no pet.h.); Tex.R.App.P. 38.1(h) and (i);
Sullivan v. Bickel & Brewer, 943
S.W.2d 477, 486 (Tex.App.--Dallas 1995, writ denied)(bare assertions of error, without argument or authority,
waive error); Devine v. Dallas County,
130 S.W.3d 512, 514 (Tex.App.--Dallas 2004, no pet.)(party waives issue on appeal by failing to adequately brief
complaint).

Turning to Hazlewood’s factual sufficiency challenge that his
violations of TDLR rules and regulations, did not
cause injury to Lafavers, we note that Hazlewood does not point this Court to any specific
authority.  The trial court found that Hazlewood
failed to comply with numerous provisions of Texas law.  Because Hazlewood
challenged these findings, we address them below.

Thomas Frist, a
TDLR investigator, testified as an expert witness via deposition at the trial
and his testimony supports a number of the trial court’s findings of fact.  Finding 29 states that Hazlewood,
Sealy, and Sweetwater failed to properly cap the Well.  Mr. Frist testified that he investigated and
found that there was not a proper cap on the Well, a violation of 16 Tex.Admin.Code
§ 76.702(d).  Mr. Frist testified that Hazlewood
failed to pressure pump cement into the annular bore from the bottom up,
instead he poured it into the well from the top down, a violation of 16 Tex.Admin.Code
§ 76.1000(a)(1).  Findings
22, 23, 24, and 25 all concern Hazlewood’s failure to
seal off the Woodbine Aquifer from the Paluxey
Aquifer in the annular space of the well with pumped concrete or bentonite. 
Mr. Frist testified that doing so violated Texas law.  Finding 31 held that Hazlewood
failed to properly cement the annular area of the Well as required by 16 Tex.Admin.Code
§ 76.1000(a)(1). 
This finding is supported by Mr. Frist’s deposition testimony.  Finding 32 states that Hazlewood,
Sealy, and Sweetwater failed to drill the well in a manner to prevent
commingling of the aquifers, in violation of 16 Tex.Admin.Code § 76.1000(d), a
finding also supported by Mr. Frist’s deposition testimony.  Finding 19 held that Hazlewood,
Sealy, and Sweetwater failed to drill and complete the Well pursuant to TDLR
rules and regulations.  This finding is also
supported by the evidence and testimony noted above.

A thorough review
of the record reveals that the great weight and preponderance of the evidence
supports the trial court’s findings of fact that Hazlewood violated provisions
of the Texas Administrative Code, and that the proof that Hazlewood violated
provisions of Texas law, causing injury to Lafavers,
was not so contrary to the overwhelming weight of the evidence that it was
clearly wrong and unjust.  Cain, 709 S.W.2d at
176.  Hazlewood’s
third issue is overruled.

Award of Attorney’s Fees

            Hazlewood’s fifth issue is that the trial court erred in
awarding attorney’s fees to Lafavers.  Hazlewood fails to identify
or cite any legal authority in support his argument, other than claiming that
the award of fees was “unjustified.”  See Tex.R.App.P. 38.1(h) and (i).

Accordingly, Hazlewood failed to adequately brief, and has therefore
waived any alleged error by the trial court in relation to this issue.  See
Tex.R.App.P.
38.1(i); Fredonia
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284-85 (Tex. 1994)(discussing
the “long-standing rule” that an appellate point may be waived due to
inadequate briefing); Rhoades v. Prosser,
2010 WL 1999150, *4 (Tex.App.--Fort Worth 2010, no pet.h.)(noting same and overruling
issue for failing to brief).  Hazlewood’s fifth issue is overruled.

Challenged Findings of Fact

            Hazlewood
challenges thirty-three findings of fact, generally attacking the factual
sufficiency of the evidence supporting the findings.  Hazlewood contends that the findings of fact
are manifestly unjust and against the great weight and preponderance of the
evidence, but fails to direct this Court to any authority supporting his
argument.  An appellant’s “brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex.R.App.P. 38.1(i); see also Tex.R.App.P. 38.1(h).  Noting that Hazlewood’s
brief focuses on the factual sufficiency of the verdict, we will set Hazlewood’s procedural deficiencies aside.  The totality of the record contains credible
evidence to support the trial court’s findings of fact, and the legal
conclusions drawn from them.  See State Office of Risk
Management v. Edmondson, 305 S.W.3d 344, 349-50 (Tex.App.--Dallas
2010, no pet.).

Findings of fact
can be reviewed for factual sufficiency. 
See Zisblatt
v. Zisblatt, 693 S.W.2d 944, 949 (Tex.App.--Fort Worth 1985, writ dism’d).  Findings of fact in a case tried to the court
have the same force and effect as a jury’s verdict on jury questions.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).
 We uphold the trial court’s findings if
there is more than a scintilla of evidence to support them.  Stedman v. Georgetown Sav. & Loan Ass’n, 595 S.W.2d 486, 488
(Tex. 1979).  When
reviewing findings of fact, findings will be set aside only if the evidence is
so weak or the finding is so against the great weight and preponderance of the
evidence that it is wrong and manifestly unjust.  MCI
Telecommunications Corp., 993 S.W.2d at 672.

We have reviewed
the record as a whole and find that the evidence is not so weak or against the
great weight and preponderance of the evidence that the findings challenged by Hazlewood
are manifestly wrong or unjust.  While not
presented as a specific issue, we overrule Hazlewood’s
assertion of error relating to the challenged findings of fact.

Appellee’s Request for Sanctions

            Lafavers filed a cross-point seeking a sanction for an
additional 10 percent of the judgment amount against Hazlewood, asserting that
the appeal is frivolous.  See. Tex.R.App.P. 45.  While the imposition of sanctions is within
our discretion, we only do so in truly egregious circumstances.  Angelou v. African Overseas Union, 33 S.W.3d 269, 282 (Tex.App.--Houston [14th Dist.] 2000, no pet.).  We have considered an award of sanctions.  However, Hazlewood’s
appeal is not so frivolous as to warrant sanctions.  Tex.R.App.P.
45; Angelou, 33 S.W.3d at 282; Clopton v. Pak, 66 S.W.3d 513, 517 (Tex.App.--Fort Worth 2001, pet. denied)(sanctions
should be imposed only in egregious circumstances).  Lafavers’ request
for sanctions is denied.

CONCLUSION

            Having
overruled each of Appellant’s points of error, we affirm the judgment of trial
court.

 

 

December
12, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Rivera, and Antcliff, JJ.











[1]
This case was transferred from the Second Court of Appeals to this Court
pursuant to a docket equalization order entered by the Texas Supreme
Court.  See Tex.Gov’t Code Ann. § 73.001 (West 2005). 
We have applied precedent of the Fort Worth Court of Appeals.  See Tex.R.App.P. 41.3.





[2]
Lafavers has filed a cross-point, asserting that Hazlewood’s
appeal is frivolous pursuant to Tex.R.App.P.
45, which we address below.

 





[3]
Causes of action for fraud and negligent misrepresentation were abandoned in
amended pleadings.

 





[4]
Hazlewood
filed a motion to review the MFSJ as to the conversion claim on August 26,
2010.  We find nothing in the record to
indicate that the trial court ruled on this motion.  However, the motion to review was filed after
the MFSJ was granted and before the date the trial commenced, and there is
nothing indicating that the court changed its mind after receiving the motion,
which was essentially a motion for reconsideration.  The motion was eventually overruled by
operation of law.  See e.g., Lattrell v. Chrysler Corp., 79 S.W.3d 141, 146 (Tex.App.--Texarkana 2002, pet. denied)(
motion to reconsider overruled by operation of law though there was no record
of hearing).

 





[5]
Water was found in producing quantities.





[6]
Witnesses throughout the testimony use the terms “concrete” and “cement”
interchangeably.  We will use the term
“concrete” in this opinion.





[7]
During the investigation, letters were sent by both Hazlewood and Lafavers regarding returning to the property and resolving
issues with the Well.  A TDLR
investigator sent Lafavers a letter on
October 31, 2007, where the TDLR noted three violations of Texas
regulations in relation to the well and advised that the TDLR had determined
that Lafavers should let Hazlewood back on to the
property to allow Hazlewood to
either correct all violations or to plug and reimburse, otherwise Lafavers would be held responsible.  Lafavers’ attorney
responded with a letter setting out conditions under which Hazlewood would be allowed back on the
property.  Hazlewood declined to accept the conditions, as set out in the
TDLR’s report.





[8]
These allegations were found to be supported by evidence following an
administrative hearing before the State Office of Administrative Appeals, and
set out in a Proposal for Decision (“PFD”). 
Public records indicate that the PFD was accepted by the Texas
Commission of Licensing and Regulation at a public meeting on May 19,
2009.  See http://www.tdlr.state.tx.us/Minutes/Commins/commin051909.htm
(last visited October 9, 2012).  Counsel
for Appellant advised the trial court that this matter was appealed to the
District Court in Travis County, but there is no record of the final
disposition of the matter in the record before this Court.  Further search of public records indicates
that on remand from the 353rd District Court of Travis County, the TLDR
reconsidered an appropriate administrative penalty for violation of the
disclosure requirements of 16 Tex.Admin.Code 76.706(d) against Hazlewood
on June 29, 2012.  See http://www.license.state.tx.us/Minutes/Commins/commin062912.htm
(last visited October 9, 2012).





[9]
We note that once Hazlewood
breached the contract, Lafavers had the choice of
either continuing or ceasing performance of the contract.  Board of Regents of University of Texas v. S & G Const. Co.,
529 S.W.2d 90, 96-7 (Tex.Civ.App.--Austin 1975, writ ref’d n.r.e.).  Hazlewood’s cited legal authority fails to acknowledge this
fundamental provision of contract law, which has been applied to construction
contracts.  Id.





[10]
This unchallenged finding is binding unless the contrary is established as a
matter of law or there is no evidence to support the finding.  MCI
Telecommunications Corp., 993 S.W.2d at 672.